2004 SD 26

**FIRST DAKOTA NATIONAL BANK, Plaintiff and Appellee,**

v.

**PERFORMANCE ENGINEERING AND MANUFACTURING, INC., Fred L. Thurman, Defendants,**

and

**State Steel Supply Company, Defendant and Appellant.**

No. 22888.

Supreme Court of South Dakota.

Argued on Jan. 14, 2004.

Decided Feb. 25, 2004.

Michael Henderson, Scott Perrenoud of Cadwell, Sanford, Deibert & Garry, Sioux Falls, South Dakota, Attorneys for plaintiff and appellee.

Timothy Clausen, Barbara F. Orzechowski of Klass, Stoik, Mugan, Villone, Phillips, Orzechowski, Clausen & LaPierre, Sioux City, Iowa, Attorneys for defendant and appellant.

MEIERHENRY, Justice.

[¶ 1.] First Dakota National Bank and State Steel Supply Company were secured creditors of Performance Engineering & Manufacturing, Inc. (PEM). First Dakota sought declaratory relief asking the trial court to determine the order of priority to PEM's accounts receivables. Both First Dakota and State Steel claimed a valid first lien. Both parties filed motions for summary judgment. The trial court granted summary judgment in favor of First Dakota. State Steel appeals. We affirm.

## FACTS

[¶ 2.] CorTrust Bank, First Dakota, and State Steel had perfected security interests in assets, including accounts receivables, of PEM. PEM experienced financial difficulties and was failing to meet its debt obligations. State Steel agreed to advance funds to PEM to complete work

in progress. In exchange for State Steel's infusion of funds, First Dakota agreed to subordinate its prior perfected security interest in PEM's accounts receivables in favor of State Steel for the time period commencing on February 22, 2001 and ending on May 23, 2001 and limited to a maximum amount of $120,000. Subsequent to the subordination agreement, State Steel and two other non-party creditors filed a Chapter 11 Bankruptcy Petition forcing PEM into bankruptcy on April 3, 2001. Prior to the bankruptcy filing, State Steel had advanced PEM $42,294. Subsequent to the bankruptcy filing, PEM sought permission from the Bankruptcy Court to allow State Steel to advance additional funds to PEM. On May 3, 2001, the bankruptcy court approved the postpetition financing which included the approval of a stipulation agreement between State Steel and CorTrust Bank. The court's approval order authorized State Steel to provide PEM with up to $64,500 in additional post-petition funds in order for PEM to fill several pending orders. The court's order also provided that CorTrust would receive the first $5,552 of accounts receivables and that State Steel would thereafter receive the lesser of $64,500 or the amount of its post-petition advancements to PEM. Additionally, State Steel was to procure hazard insurance for PEM. Although First Dakota had notice and appeared at the bankruptcy hearing regarding the approval of the post-petition financing and stipulation, First Dakota was not a party to the stipulation agreement.[1]

[¶ 3.] State Steel infused over $190,000 into the financially troubled PEM. Of the total, State Steel advanced $120,000 during the February to May timeframe, and was reimbursed that amount by First Dakota thereby satisfying their subordination agreement. In addition, State Steel advanced at least $64,500 after the bankruptcy stipulation was approved plus $5,879 for insurance. On July 5, 2001, the Bankruptcy Court entered an order abandoning various properties from the bankruptcy estate, including the accounts receivable funds.[2] A portion of the funds in the amount of $45,640 is the subject of this dispute. Both State Steel and First Dakota claim entitlement to the funds. State Steel raises the following issue:

## ISSUE

Whether First Dakota as a third party beneficiary was bound by the Stipulation Agreement between CorTrust and State Steel.

---

1. Although State Steel assigned as error the trial court's conclusion that First Dakota was not a party to the stipulation, State Steel states in its Statement of Undisputed Material Facts attached to the Summary Judgment Motion that First Dakota was not a party to the stipulation. Since this fact was not disputed in the lower court, it will not be addressed on appeal. Paragraph 11 of State Steel's Statement of Undisputed Material Facts states:

   FDNB was not a party to the stipulation that served as the basis for the Bankruptcy Court's approval of the post-petition financing by State Steel. However, FDNB had notice and was represented by counsel at the hearing on PEM's Motion for Approval of Post–Petition Financing. Furthermore, FDNB filed a response to PEM's said Motion in which it stated: "First Dakota National Bank would not resist a third party grant of post-petition credit to the debtor after entry of an order for relief, upon reasonable terms, and for purposes reasonably calculated to benefit the estate and its creditors...."

2. We note that the parties have not alleged that the Bankruptcy Court's Order affected the priority rights of the parties. In other words, this is not an issue of a court-ordered reorganization of priorities for post-petition financing. The issue presented to this Court is the effect of a stipulation upon a third party's security interest.

## STANDARD OF REVIEW

[¶ 4.] Review of summary judgment is well-settled:

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and [established] entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party [,] and reasonable doubts should be resolved against the moving party.... Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied.

*Balster v. Wipf*, 2003 SD 135, ¶ 8, 672 N.W.2d 475, 478 (citing *Hasse v. Fraternal Order of Eagles # 2421*, 2003 SD 23, ¶ 7, 658 N.W.2d 410, 412).

## DECISION

[¶ 5.] State Steel claims that First Dakota should be bound by the stipulation agreement between State Steel and CorTrust as a third party beneficiary. State Steel asserts that First Dakota is an intended beneficiary citing to the definition of beneficiary found in Restatement of Law Second—Contracts § 302(1) (1981). The Restatement provision sets forth the circumstances under which one would be considered an intended beneficiary of a promise:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Id.* State Steel claims that the requirements of the Restatement provision were met. State Steel claims that all of the parties to the Stipulation intended that the secured creditors would benefit directly by the infusion of new funds. The stipulation provided that secured creditors were to be paid "upon accounts receivable generated as a result of pending orders." State Steel argues that since First Dakota was a "secured creditor on the Debtor's accounts receivables," the agreement was, in part, made for First Dakota's benefit. Another benefit to First Dakota was being named on the hazard insurance policy State Steel purchased for PEM. Although the evidence supports State Steel's claim that First Dakota is a beneficiary of the stipulation agreement, the real inquiry is whether the stipulation binds First Dakota to its terms.

[¶ 6.] State Steel asserts that First Dakota is bound by the terms of the agreement and should receive the benefits as well as burdens of the agreement. State Steel relies on *Haakinson & Beaty Co. v. Inland Ins. Co.*, 216 Neb. 426, 344 N.W.2d 454, 459 (1984) for support of the proposition that a third party beneficiary to an agreement is "subject to all of its burdens." *Id.* In *Haakinson*, the third party beneficiary contested the forum selection clause in a bond. *Id.* The court stated "[i]t would be a strange situation if one could sue on a contract and gain all of its benefits, and yet be permitted to ignore any of its obligations." *Id.* at 459. Further, State Steel points to the Nebraska Supreme Court's decision in *Shelter Insurance Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74 (1993) as further support to hold third party beneficiaries subject to the obligations under contracts from which

they benefit. In *Shelter,* the court found that a third party beneficiary of an automobile policy was bound by the policy's subrogation clause. *Id.* at 78. There the court said the claimant "became a third-party beneficiary of the policy or insurance contract between [insured] and [insurer] when [insurer] paid [claimant's] medical expenses as required by the policy which [insurer] had issued to [insured]. Therefore, [claimant], by accepting a contractual benefit, is bound by the subrogation clause contained in the insurance policy." *Id.* These cases do not address the issue in the present case. The courts in *Haakinson* and *Shelter* merely ruled that as beneficiaries exerting their rights under the contracts, they were bound by the provisions under which they claimed those rights. No liabilities or risks were placed on the beneficiaries.

[¶ 7.] Distinguishable in the present case is that First Dakota is not claiming any rights under the Stipulation Agreement. In fact, the interpretation advanced by State Steel gives no new rights to First Dakota but instead subordinates its priority rights to State Steel up to the $64,500. The attempt is to impose liability on First Dakota who is not a party to the agreement.

[¶ 8.] In two cases similar to the present case, federal courts have held that a third party cannot be held liable under a contract to which it is not a party. *Motorsport Engineering, Inc. v. Maserati SPA,* 316 F.3d 26 (1stCir.2002); *Abraham Zion Corp. v. Lebow,* 761 F.2d 93 (2ndCir.1985). In *Motorsport,* an auto dealer brought suit against an auto distributor. Motorsport had never had a contract with the distributor named in the case. However, Motorsport had previously had a contract with another distributor in which the named distributor was an intended beneficiary. Motorsport argued that the named distrib-

utor "was 'in reality' a party to the contract *because* it was given explicit rights under the contract." *Motorsport,* 316 F.3d at 29. The *Motorsport* court stated:

> This argument rests on a misunderstanding of contract law. A third-party beneficiary is one who is given rights under a contract to which that person is *not* a party. Obligations under such a contract, including any obligations to third parties, are created by agreement between the *signatories* . . . If the signatories so intend, a third party can enforce the contract against the signatory so obligated. But the third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either.

*Id.* (internal citations omitted). In *Abraham,* a clothing manufacturer sought to bar a designer from using the designer's own name on the labels of his designs. The manufacturer based its claim on the fact that it had contracted to use the name with other member's of the designer's family. The designer himself was not a party to the agreement between his family and the manufacturer. The manufacturer asserted however that the designer was a third-party beneficiary to the agreement so was bound by it. The *Abraham* court stated:

> Plaintiff's contention that [Defendant] was a third-party beneficiary of that agreement, even if correct, would not advance their cause, since the question is not [Defendant's] right to enforce the agreement but rather the right of the plaintiffs to enforce the agreement (as they construe it) *against* [Defendant].

*Id.* at 103 (citations omitted).

[¶ 9.] In addition to the federal cases, the comment to § 9–339 of the Uniform Commercial Code supports the premise that a person whose priority rights are

subordinated must be a party to the agreement. The section states, "This article does not preclude subordination by agreement by a person entitled to priority." *Id.* The Comment to § 9–339 emphasizes that "[o]nly the person entitled to priority may make [a subordination] agreement: a person's rights cannot be adversely affected by an agreement to which the person is not a party." *Id.* First Dakota's priority could not have been subordinated without it being a party to the agreement. It is undisputed that it was not a party to the stipulation agreement.

[¶ 10.] Based on the foregoing discussion, we hold that even if First Dakota was a third-party beneficiary to the Stipulation Agreement, State Steel could not subordinate First Dakota's secured priority interest without First Dakota being a party and agreeing to the subordination.

[¶ 11.] Because of this holding we need not address the other issues raised on appeal.

[¶ 12.] Affirmed.

[¶ 13.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.