2004 SD 59
ANITA LESLIE, Plaintiff and Appellant,
v.
HY-VEE FOODS, INC., Defendant and Appellee.
No. 22678
Supreme Court of South Dakota.
Argued On October 6, 2003
Reassigned March 25, 2004
Opinion Filed April 28, 2004
CATHERINE M. SABERS, JOHN C. SOGN of Lynn, Jackson, Shultz & Lebrun Attorneys for plaintiff.
Sioux Falls, South Dakota and appellant.
GARY P. THIMSEN, ERIN C. SNYDERS of Woods, Fuller, Shultz & Smith Attorneys for defendant.
Sioux Falls, South Dakota and appellee.
MEIERHENRY, Justice.
[¶ 1.] Anita Leslie brought an action against Hy-Vee Foods, Inc. claiming sexual harassment and retaliatory discharge. Hy-Vee moved for and was granted summary judgment on both claims. Leslie appeals. We reverse in part and affirm in part.

FACTS AND PROCEDURE
[¶ 2.] Leslie began her employment with Hy-Vee No. 3 in 1987 as a courtesy clerk.[1] Hy-Vee promoted her numerous times.[2] She received her final promotion in 1994 to personnel manager; she retained that position until she was terminated in 2000. Her duties included employee orientation, reviewing store manuals, and processing payroll. She also coordinated store events, processed 401k's, and effectuated terminations.
[¶ 3.] As personnel manager, Leslie worked in close proximity to the Store Director. A half-wall with a sliding window divided her area from the Director's area. The Store Director was the top position at individual Hy-Vee stores. M. J. Klokkenga held the director position from 1987 until spring of 2000. In April of 2000, Paul Koll assumed the position. Leslie's duties remained unchanged under Koll. Leslie was pregnant when Koll became the director. During the six months Leslie and Koll worked together, Leslie became concerned about Koll. She perceived that Koll was an ineffective director. She also felt that Koll displayed discriminatory and harassing conduct toward her and others.[3] Leslie decided to report her concerns.
[¶ 4.] In mid-October of 2000, Leslie contacted Hy-Vee's Human Resources Department. Leslie spoke with Mary Bryant the assistant director. Bryant took notes during the phone conversation and compiled an internal company memorandum. Leslie's complaints to Bryant included Koll's bad language, his response of "fire the bitch" when ordering the termination of a female employee, and his jokes. The following day, pursuant to Hy-Vee's sexual harassment policies, Leslie contacted Ray Stewart, a Hy-Vee vice president. Stewart referred Leslie to Monte Wiese, Director of Operations.
[¶ 5.] In a phone conversation with Wiese, Leslie reported that Koll used "coarse language," spent excessive time on the phone, worked minimally, and had commented that Wiese could not tell him what to do. Wiese also confirmed that Leslie reported Koll's use of the "F word," and his "fire the bitch" comment. Leslie also reported an incident involving a pregnant employee who asked Koll for a shift change. Leslie described that the woman left Koll's office in tears because of Koll's rudeness and that Koll said after the woman left, "no little girl is going to waltz in here and tell me what she's going to do." According to Leslie, Koll then inquired about the woman's health benefits and whether she received them because the prior manager felt sorry for her. Leslie believed Koll's behavior and comments conveyed his apparent anger about providing benefits for pregnant employees. Leslie also claims that she told Wiese about an offensive comment Koll made to a female employee about the employee's "tit reduction." Leslie also heard Koll remark on the phone, "you remember hershe's the one that had the tit reduction."
[¶ 6.] Wiese contacted Stewart about Leslie's complaint and visited Hy-Vee No. 3. He spoke with the Assistant Store Director about Koll's behavior. The following week Wiese spoke to Koll directly. Wiese claims he did not reveal Leslie's identity. Wiese contacted Stewart and suggested that he, Stewart and Koll discuss the situation. Stewart indicated that he would talk to Koll himself. In November, Koll and Stewart attended a manager's meeting and discussed Leslie's complaints. Wiese's, Stewart's, and Koll's recollections differ about what happened next. It is undisputed that Wiese met with Leslie and Koll on November 3, 2000. Wiese informed Leslie that "it wasn't going to be possible for her to continue to work at Hy-Vee No. 3 because of the differences between her and Koll. It just wasn't a workable situation anymore." Wiese indicated that he would check into available positions for Leslie at other Hy-Vee stores. At that time, Leslie commented that it was wrong to penalize her for making a complaint.
[¶ 7.] Wiese contacted Leslie within a few days to inform her that there was an opening at another store as a checker or possibly a customer service clerk. At the time the offer was made, Leslie, in her eighth month of pregnancy, experienced complications and was ordered to bedrest until she delivered. She relayed this to Wiese, who left the offer open pending the birth of her child. Leslie gave birth November 28, 2000.
[¶ 8.] Leslie spoke to the Assistant Store Director in January of 2001 concerning her sick leave and vacation benefits. The Assistant Store Director, with direction from Koll and Stewart, told Leslie that her vacation benefits would be paid but that her employment was terminated. Leslie then wrote to Ron Pearson, Hy-Vee's Vice President. Her letter outlined the events leading up to her termination and expressed her belief that she was retaliated against. She requested that the situation be investigated and that he contact her. In mid-February, Leslie received a letter from Pearson. He stated in part:
[T]he store director has the complete discretion for his crew. They hire who they need, and if they no longer want somebody to work with them, they remove them from their working team. Something, obviously, has happened, and, as you asked, I will get brought up-to-date.
I'm sorry you feel you did not get the hearing or the treatment you should have, but the reality is your store director did not want you to work in the store any longer. You will have to deal with him about getting your job backhe makes all the decisions. I will learn more about this at a future time.
Stewart, Wiese, and Koll each received a copy of this letter. Wiese contacted Pearson and informed him that he had promised Leslie a position at another store. Wiese called Leslie and indicated that the option to work at another store was still available.
[¶ 9.] Leslie submitted a Charge of Discrimination with the South Dakota Division of Human Rights alleging sexual harassment and retaliation. The Division issued a Determination of No Probable Cause. Leslie filed a Complaint in circuit court claiming sexual harassment and retaliation. Hy-Vee filed a Motion for Summary Judgment. The circuit court granted Hy-Vee's motion. Leslie raises on appeal the following issue:
ISSUE
Whether the Circuit Court Erred in Granting Summary Judgment for
A. Leslie's Claim for Retaliation or Retaliatory Discharge;
B. Leslie's Claim that she was Sexually Harassed by Koll and that his Actions Created a Hostile Work Environment.

STANDARD OF REVIEW
[¶ 10.] On review of summary judgment granted under SDCL 15-6-56(b), this Court:
must determine whether the moving party demonstrated the absence of any genuine issue of material fact and established entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party, and reasonable doubts should be resolved against the moving party. . . . Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. First Dakota Nat. Bank v. Performance Engineering & Manufacturing, Inc., 2004 SD 26, ¶4, 676 NW2d 395 (citing Balster v. Wipf, 2003 SD 135, ¶8, 672 NW2d 475, 478).
We further note that caution is required when reviewing a grant of summary judgment in employment discrimination cases. Equal Employment Opportunity Comm'n v. Wyeth, 302 FSupp2d 1041, 1059-60 (Iowa 2004). The Eighth Circuit has explained:
because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant.
Id. at 1060 (quoting Crawford v. Runyon, 37 F3d 1338, 1341 (8thCir 1994)).

DECISION

A. Retaliation
[¶ 11.] To establish a prima facie case of retaliatory discharge, the complainant has to show:
(1) she engaged in Title VII protected activity (reported sexual harassment);
(2) she subsequently suffered adverse employment action; and
(3) a causal link between engaging in protected activity and the adverse employment action.
Palesch v. Missouri Comm'n on Human Rights, 233 F3d 560, 569 (8thCir 2000). Once a prima facie case of retaliation is established, the burden shifts to the employer to produce some legitimate, non-discriminatory reason for the adverse action. Id. If the employer meets this burden, the complainant must prove the proffered reason is a pretext for retaliation. Id. A retaliatory discharge claim "is not conditioned on the merits of the underlying discrimination complaint." Salz v. Stellar Industries, Inc., No. C02-3095-PAZ, 2004 WL 439231, at *7 (ND Iowa March 10, 2004). Rather, a complainant "must demonstrate a good faith, reasonable belief that the underlying challenged conduct violated the law." Id.
[¶ 12.] The trial court found that Leslie did not establish that she engaged in a statutorily protected activity. The court based its finding on the inter-office memorandum documenting Leslie's initial call. It summarized the memorandum as indicating that Leslie's complaint was about Koll's "management style and work performance." Further, the court noted that Leslie "did not couch her complaints concerning [] Koll in terms of sexual harassment until she drafted her January 30, 2001 letter to Hy-Vee, after her termination." Leslie claims the court erred by failing to consider all the evidence and reasonable inferences in the light most favorable to her. She argues that her sworn deposition and affidavit and Wiese's sworn testimony reveal that there are genuine issues of material fact as to whether Leslie engaged in protected activity. We agree.
[¶ 13.] The question is whether Leslie's voiced concerns, prior to termination/demotion, amounted to "conduct that a reasonable person could have found violated Title VII." Curd v. Hank's Discount Fine Furniture, Inc., 272 F3d 1039, 1041 (8thCir 2001). Leslie's initial complaints to Bryant and Wiese included: Koll routinely using the word "fuck" in her presence; Koll telling a Lorena Bobbit joke; Koll stating "fire the bitch" over the intercom; Koll's reference to a female employee's "tit reduction"; and Koll's comment that "no little girl is going to waltz in here and tell me what she's going to do" in response to a pregnant employee's request for a shift change. Leslie, who was pregnant, thought that Koll was upset about providing benefits to pregnant employees. Further, Wiese's notes indicated that in his original conversation with Leslie that she complained that Koll's statements made her uncomfortable. Additionally, the manner in which Wiese responded to Leslie's complaint also infers that he considered it an allegation of sexual harassment. Wiese protected Leslie by not divulging her identity when he first began investigating her claim. This is consistent with Hy-Vee's written sexual harassment policy that "confidentiality will be maintained" when employees report conduct which they believe violates the harassment policy. Leslie's affidavit states that she believed her complaint to Wiese concerned "sexually harassing and sexually discriminating conduct" by Koll. Leslie has demonstrated a reasonable belief that she was reporting discriminatory employment practices. Evans v. Kansas City, Missouri School Dist., 65 F3d 98, 100 (8thCir 1995). Taking the evidence in the light most favorable to Leslie, she has met the first elementengaging in a protected activity.
[¶ 14.] The trial court did not address elements two and three. However, the record indicates both have been met. Considering element two, Leslie suffered adverse employment actions. She was terminated from Hy-Vee No. 3 after thirteen-plus years of employment, where she had worked her way up from sacker to personnel manager. Although Wiese offered an opening at another store, the position was for a checker or customer service position. In his testimony, Wiese admitted that "personnel manager" is a higher position than either checker or customer service positions even though Leslie was to receive the same salary and benefits she received as personnel manager. See Cross v. Cleaver, 142 F3d 1059, 1073-74 (8thCir 1998) (citing cases where employment actions were sufficiently adverse to sustain retaliation claim, including tangible changes in duties, demotion, and reassignment). As to element three, the evidence establishes a causal link between her complaint and the adverse employment action. There was close proximity in time between Leslie's complaint and her demotion/termination. See Kipp v. Missouri Hwy. and Transp. Comm'n, 280 F3d 893, 896-97 (8thCir 2002) (discussing timing of adverse employment action).
[¶ 15.] The trial court addressed arguendo that even if Leslie established a prima facie case of retaliation, Hy-Vee met its burden of producing a legitimate reason for its adverse employment action. The court found that "Hy-Vee [] produced evidence that Plaintiff and Paul Koll were incompatible employees." The burden then shifted to Leslie to show that Hy-Vee's proffered reason was pretextual. The court concluded that Leslie failed to meet this burden. We disagree. There are contradictions indicating genuine issues of material fact. The testimony of Hy-Vee employees pertaining to the circumstances surrounding Leslie's termination is contradictory. There is no evidence of Leslie and Koll being incompatible prior to Koll learning of Leslie's complaint. Further, Leslie's Performance Appraisals were high. Koll evaluated Leslie in August of 2000 less than two months before Leslie made her initial complaints. In 10 of 12 categories he gave her a 5 (outstanding) and a 4 (very good) in the other categories. Significantly, Koll rated her outstanding in the category of "Morale & Loyalty," which involves "the extent to which an employee shows proper morale and loyalty to the store, management and fellow employees." She received a rating of very good in the category of "Interpersonal Relationships," which rates "the extent to which an employee is willing and demonstrates ability to cooperate, work and communicate with coworkers, supervisors, subordinates and/or outside contacts. Attitude and teamwork." Koll's written comments include "Honesty, friendliness and dependability are excellent traits of hers." See Davis v. Fleming Co's, Inc., 55 F3d 1369, 1371-72 (8thCir 1995) (discussing changes in employee evaluations after employee engaged in protected conduct). For purposes of summary judgment, Leslie met her burden of presenting evidence of pretext.
[¶ 16.] Considering the evidence in the light most favorable to Leslie and based on the reasonable inferences of the evidence, we determine that genuine issues of material fact exist. Summary judgment should not have been granted on the retaliation charge.

B. Sexual Harassment
[¶ 17.] Title VII protects employees against sexual harassment in the workplace. The law provides that:
It shall be an unlawful employment practice for an employer to fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin.
42 USC §2000e-2(a)(1). Leslie's claim centers on the theory that Koll, her immediate supervisor, created a hostile work environment due to his sexually harassing conduct. In asserting a sexual harassment-hostile work environment claim, a plaintiff must show: (1) membership in a protected group; (2) her subjection to unwelcome sexual harassment; (3) causal link between harassment and her protected status; (4) that harassment affects a term, condition, or privilege of employment.[4]Palesch, 233 F3d at 566 (citing Harris v. Forklift Sys., Inc., 510 US 17, 21, 114 SCt 367 (1993).
[¶ 18.] In this case, the trial court found that Leslie failed to establish all the elements of a prima facie case. As to the third element, the court stated that Leslie offered "no competent evidence demonstrating a link between the complained of conduct to a race or gender-based animus." Leslie claims the trial court's finding is erroneous and that she did offer enough evidence to avoid summary judgment. She asserts that all Koll's comments she found offensive involved women: "fire the bitch"; "tit reduction"; a Lorena Bobbitt joke; his comment about a pregnant employee that "no little girl is going to . . . tell me what to do," and his negative attitude towards pregnant employees and their benefits. The trial court found that only Koll's reference to "little girl" and his inquiry about pregnancy benefits "can be inferred to have been based on Plaintiff's gender." In Stacks v. Southwestern Bell Yellow Pages, Inc., the court stated, "`the predicate acts which support a hostile-environment sexual-harassment claim need not be explicitly sexual in nature.' `Intimidation and hostility toward women because they are women can obviously result from conduct other than explicit sexual advances.'" 27 F3d 1316, 1326 (8thCir 1994) (internal and further citations omitted). In other words, "the harassment must be based on the complaining person's sex." Scusa v. Nestle U.S.A. Co., Inc., 181 F3d 958, 965 (8thCir 1999). We agree that the trial court erred in finding that Leslie failed to present evidence of a link between the conduct Leslie reported and gender. The remarks Leslie complained of, taken in the light most favorable to her, could reasonably be found to show an animus toward females.
[¶ 19.] To meet the fourth element, the plaintiff must show that the workplace is hostile. A hostile work environment is evident when "the workplace is permeated with `discriminatory intimidation, ridicule, and insult' that is `sufficiently severe or pervasive to alter the conditions of the victim's employment and create[s] an abusive working environment.'" Palesch, 233 at 566 (quoting Harris, 510 US at 21). Further, this element "includes both objective and subjective components: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." Duncan v. General Motors Corp., 300 F3d 928, 934 (8thCir 2002) (citing Harris, 510 US at 21-22). The court concluded that Leslie "failed to demonstrate that the complained of conduct was sufficiently patterned or pervasive so as to result in a hostile or abusive working environment." Leslie argues that although "when considered in isolation, none of [her] claims may rise to the level of sexual harassment[,]. . . her work environment was shaped by the cumulative effect of the conduct and comments."
[¶ 20.] The Supreme Court has enumerated particular factors to use when considering whether the conduct "is sufficiently severe or pervasive as to constitute sexual harassment under Title VII, and therefore affect the employee's terms and conditions of employment":
(1) frequency of the discriminatory conduct;
(2) its severity;
(3) whether it is physically threatening or humiliating, or a mere offensive utterance; and
(4) whether it unreasonably interferes with an employee's work performance.
Harris, 510 US at 23. "More than a few isolated incidents are required." Scusa, 181 F3d at 967 (further citations omitted). This factor presents a high threshold for plaintiffs to clear because stringent standards are imposed to "`filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" Duncan, 300 F3d at 934 (quoting Faragher v. City of Boca Raton, 524 US 775, 788, 118 SCt 2275 (1998)).
[¶ 21.] In this case, Leslie has presented adequate evidence to show that she personally was uncomfortable with Koll's comments. She has not, however, shown that as a matter of law that these incidents "were so severe and extreme that a reasonable person would find that the terms or conditions of [her] employment had been altered." Duncan, 300 F3d at 934. In reviewing Eighth Circuit cases, it is clear that it is difficult to satisfy the hostile environment element. For example, in Duncan, the employee's supervisor was found to have propositioned employee for a relationship, subjected employee multiple times to improper touching, requested employee to sketch sexual depiction, posted a "man-haters club" poster, and requested employee to draft "he-men woman-haters" beliefs, supervisor's screen saver depicted a nude woman and he had a penis-shaped pacifier in his office. 300 F3d at 931-34. These behaviors were determined not to meet the required threshold. Id. at 934-35. See also Tuggle v. Mangan, 348 F3d 714 (8thCir 2003) (employer's conduct, while harassing, was "not the kind of actionable conduct that constitutes a constitutional violation."); Pirie v. The Conley Group, Inc., No. 4:02-CV-40578, 2004 WL 180259 (Iowa, Jan. 7, 2004) (summarizing several Eighth Circuit cases dealing with hostile work environment analysis). Koll's actions although admittedly boorish and ill-advised did not create an objectively hostile workplace.
[¶ 22.] The trial court's grant of summary judgment on Leslie's retaliatory discharge claim is reversed; its grant of summary judgment on her sexual harassment-hostile work environment claim is affirmed.
[¶ 23.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and ENG, Circuit Court Judge, sitting by Order of the Court, concur.
[¶ 24.] ENG, Circuit Court Judge, sitting for SABERS, Justice, disqualified.
NOTES
[1] Courtesy clerks sack patrons' purchases. She worked at the 33rd Street and Minnesota, Sioux Falls location.
[2] She was promoted to checker, cheese island hostess, front end manager, shift manager, customer service manager, and accounts payable department before her promotion to personnel manager.
[3] A female employee had complained to Leslie about inappropriate physical contact by another employee. Leslie reported the complaint to Koll and he responded that the woman who made the complaint was a "nut case." To her knowledge, Leslie does not believe the situation was ever addressed.
[4] A fifth element is necessary if the allegations involve a non-supervisor: plaintiff''s "employer knew or should have known of the harassment and failed to take proper action." Palesch, 233 F3d at 566. Plaintiffs who allege that they were harassed by supervisors "need not prove [their] employer knew or should have known of the harassment." Id. at n5.