#30478-aff in pt & rev in pt-SRJ
**2024 S.D. 75**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ANGEL MATTA,         Plaintiff and Appellant,

   v.

DAKOTA PROVISIONS,       Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE KENT A. SHELTON
Judge

\* \* \* \*

TUCKER J. VOLESKY
Mitchell, South Dakota       Attorney for plaintiff and
appellant.

REED RASMUSSEN of
Siegel, Barnett & Schutz, L.L.P.
Aberdeen, South Dakota      Attorneys for defendant and
appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
JUNE 4, 2024
OPINION FILED **12/11/24**

#30478

JENSEN, Chief Justice

[¶1.]     Angel Matta was hired as a production worker by Dakota Provisions in February 2020.  Throughout his short tenure, Dakota Provisions documented concerns with Matta's work attendance.  Matta was injured at work on March 23, 2020, which caused him to miss several weeks of work.  Matta filed a workers' compensation claim due to his injuries and Dakota Provisions terminated Matta one month later.  Matta filed suit alleging wrongful termination and that his termination violated public policy.  Dakota Provisions moved for summary judgment on Matta's claims which the circuit court granted.  Matta appeals the circuit court's entry of summary judgment.  We affirm in part and reverse in part.

**Factual and Procedural Background**

[¶2.]     Dakota Provisions is a meat production and processing business located in Huron.  Matta began working for Dakota Provisions on February 17, 2020, and was provided several employment forms including an employee handbook (the Handbook) and an acknowledgment form which indicated that he had received and read the Handbook.  The Handbook acknowledgment included a statement that Matta was "an 'at will' employee" and that the Handbook did not "constitute a contract between [Matta] and Dakota Provisions."  The Handbook further explained that "Dakota Provisions is an at-will employer.  Employees are free to terminate their employment at any time, for any reason, with or without notice and [Dakota Provisions] may terminate the employee's employment at any time, with or without cause and with or without notice."

[¶3.]    The Handbook also included an explanation of the "No Fault Attendance Policy" (the Policy). The Policy outlined the importance of regular and punctual attendance for work and assessed "points" for different forms of attendance concerns, including a half point each time an employee reported late for work. The Policy also assessed points for missed work due to health-related issues, even when a doctor's excuse was provided:

> If an employee has an illness lasting more than one workday and a Doctor's excuse is provided, the employee will only be charge [sic] with one point for consecutive days of illness; regardless of the duration. However, if an employee is absent for more than one consecutive day and does not provide a Doctor's excuse, a point will be assessed for each day absent. Failing to report for work and failing to call in [] counts as two (2) points; (NO CALL/NO SHOW) for three (3) consecutive days will result in immediate termination of employment.

[¶4.]    The Policy provided that an employee would be automatically terminated upon the accumulation of ten points within one calendar year but clarified that "[t]he following attendance guidelines do not constitute a contract, expressed or implied and are not intended as limitations upon [Dakota Provisions'] judgment to expand, alter or to otherwise modify them as determined by the facts of each individual situation." In addition to the explanation of the Policy in the Handbook, Matta also received and signed a one-page summary of the Policy, and acknowledged that he had read and understood "the No Fault Attendance Policy as stated in the [Handbook]."

[¶5.]    Approximately one month after Matta began working for Dakota Provisions, he was cited for "poor attendance during [his] probationary period" in a disciplinary action form dated March 15, 2020. Matta signed the form,

acknowledging that it was his final warning and any future instance of late or missed work without excuse would result in termination.

[¶6.]     On March 23, 2020, Matta slipped and fell on ice in Dakota Provisions' parking lot and suffered a fractured sacrum and coccyx.  He immediately reported his injuries to Dakota Provisions and sought medical treatment.  Dakota Provisions received a health care note on April 1 from Matta's care provider who recommended Matta not return to work for at least one week.  During this time, Dakota Provisions assisted Matta with filing a workers' compensation claim, and he received workers' compensation benefits for the injuries he sustained from the fall and for the time he missed work.  Matta was later medically cleared to work for five hours per day and returned to work under these conditions on April 13.  Upon his return, Matta received a second written disciplinary action from Dakota Provisions on April 16 after he reported late for work on April 15.[1]

[¶7.]     By April 22, Matta was cleared by his medical provider to return to work full time but was directed to call if a full day of work was "too much".  Matta reaggravated his injury while working on April 30 and sought medical treatment. He was given a doctor's note recommending only light work until they were able to receive Matta's MRI reports.  The note further indicated that an appointment was

---

1.    The disciplinary action form showed he was previously assessed points for absenteeism on March 10, 12, and 13 which presumably were the absences that led to his initial written discipline on March 16.  The form also showed a "no call/no show" event on March 24, the day after his fall in the parking lot. Matta claimed in his deposition that he was medically excused from work on March 10, 12, and 13 because of intestinal problems.  However, the disciplinary action form in early March indicated that he failed to notify Dakota Provisions prior to these absences and the record does not show that Matta provided a doctor's note to Dakota Provisions to excuse these absences.

being set up with an orthopedist. On May 1, Matta's health care provider wrote an additional note stating that Matta was "off work until [he could see an] orthopedic doctor . . . on May 6[.]"[2] After meeting with the orthopedist, Matta was referred to a spine specialist and was ordered not to return to work until May 19. It is unclear whether this information was communicated to Dakota Provisions.

[¶8.]       The personnel action form in Matta's personnel file shows that he was terminated on May 1, 2020, for "poor attendance during [his] probationary period." Matta claims he first learned of his termination approximately a week and a half later through a child support enforcement letter from the Department of Social Services (DSS). Upon receiving the DSS letter, Matta called Dakota Provisions who informed him that he was terminated because he had "missed some days" at work. Matta was informed that he would continue to receive workers' compensation benefits for the medical bills associated with his injuries but would no longer be receiving weekly disability payments.

[¶9.]       Matta's attorney also reached out to Dakota Provisions and inquired about Matta's termination. Despite the earlier form indicating that Matta had been terminated on May 1, Dakota Provisions' human resources (HR) director responded to Matta's attorney with a letter dated May 30, 2020, and explained that Matta was terminated "because of attendance issues effective 5-6-20." In addition to the previously noted attendance concerns, the letter stated that on May 1, 4, and 5

---

2.       The record shows that the May 1 note was faxed to Dakota Provisions on May 1 at 3:50 p.m. Dakota Provisions does not dispute receiving the May 1 note.

"[Matta] did not come to work or call in. This constitutes grounds for termination as it is 3 days in a row—no call no show."

[¶10.] Matta filed this action against Dakota Provisions alleging he was wrongfully terminated in retaliation for filing a workers' compensation claim in violation of SDCL 62-1-16. Matta subsequently amended his complaint by removing a reference to SDCL 62-1-16 and broadly alleging his termination "was in violation of the law and contrary to public policy."[3]

[¶11.] Dakota Provisions filed a motion for summary judgment on May 5, 2023. In its brief in support of summary judgment, Dakota Provisions asserted that Matta was an at-will employee who could be terminated from employment "for virtually any reason." In his resistance, Matta argued that the Policy created an express or implied contract that limited Dakota Provisions' ability to terminate him before he had accumulated ten attendance points. Matta also argued that he was terminated against public policy on the basis of a disability or in retaliation for filing a workers' compensation claim in violation of SDCL 62-1-16. Matta also filed a summary judgment motion arguing, as a matter of law, that he was wrongfully terminated by Dakota Provisions. In addition to his summary judgment motion,

---

3. Matta's amended complaint does not otherwise specify his claims against Dakota Provisions. Dakota Provisions expressed before the circuit court that it was difficult to determine the claims Matta was making and his complaint seemed to be a "moving target." However, it did not move to dismiss the complaint nor moved for a more definitive statement under SDCL 15-6-12(e) before moving for summary judgment. Further, in their written and oral arguments to the circuit court, the parties argued and addressed all three of Matta's claims for wrongful discharge based on express or implied contract; wrongful termination based upon public policy under SDCL 20-13-10; and retaliatory discharge under SDCL 62-1-16. The parties have also fully argued and presented all three theories as issues on appeal.

Matta also filed a motion to conduct discovery on punitive damages. Dakota Provisions filed a brief responding to each of the claims made by Matta in his resistance to summary judgment and in support of his own motion for summary judgment.

[¶12.]	At the conclusion of the summary judgment hearing, the circuit court orally denied Matta's motion for summary judgment and granted Dakota Provisions' motion for summary judgment. Based upon this decision, the court declined to rule on Matta's motion for discovery on punitive damages. Matta appeals the circuit court's grant of summary judgment in favor of Dakota Provisions. He raises three issues, which we restate as follows:

1.	Whether the Policy created an express or implied contract that Dakota Provisions violated by terminating Matta outside the procedures set forth in the Policy.

2.	Whether Dakota Provisions violated public policy by terminating Matta because of his alleged disability.

3.	Whether a genuine issue of material fact exists as to whether Matta was terminated in retaliation for filing a workers' compensation claim in violation of SDCL 62-1-16.

### Analysis and Decision

[¶13.]	This Court reviews "a circuit court's entry of summary judgment under the de novo standard of review." *Ries v. JM Custom Homes, LLC*, 2022 S.D. 52, ¶ 14, 980 N.W.2d 217, 222 (quoting *Wyman v. Bruckner*, 2018 S.D. 17, ¶ 9, 908 N.W.2d 170, 174). "We will affirm a circuit court's 'grant of a motion for summary judgment when no genuine issues of material fact exist, and the legal questions have been correctly decided.'" *Id.* (quoting *Harvieux v. Progressive N. Ins. Co.*, 2018

S.D. 52, ¶ 9, 915 N.W.2d 697, 700). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Geidel v. De Smet Farm Mut. Ins. Co. of S.D.*, 2019 S.D. 20, ¶ 7, 926 N.W.2d 478, 481 (quoting *N. Star Mut. Ins. v. Korzan*, 2015 S.D. 97, ¶ 12, 873 N.W.2d 57, 61).

### 1. *Contract claim based upon the Policy.*

[¶14.] Matta initially argues that the Policy is a "self-contained document detailing a list of specific grounds and procedures for discipline" which created an express or implied contract that limited Dakota Provisions' authority to terminate him for attendance reasons. Matta argues that "the Policy contained both an exclusive list of grounds for discipline regarding attendance and a specific procedure for employee discipline up to termination," without explicitly preserving an at-will employment relationship. According to Matta, these procedures limited Dakota Provisions' ability to terminate his employment for attendance related reasons until he accumulated ten points. Matta argues his termination, prior to accumulating ten points, violated the Policy and breached the implied or express contract it created.

[¶15.] Dakota Provisions responds that the Policy and the Handbook clearly stated that Matta was an at-will employee and could be fired for any lawful reason. Dakota Provisions claims that the Policy merely provided a non-exhaustive list of reasons for disciplining Matta and simultaneously preserved Dakota Provisions' authority to terminate Matta at will.

[¶16.] "In the context of employment relationships, South Dakota is an employment-at-will state per the provisions of SDCL 60-4-4." *Aberle v. City of Aberdeen*, 2006 S.D. 60, ¶ 20, 718 N.W.2d 615, 621. Accordingly, unless a statute or employment contract states otherwise, an employment relationship "may be terminated at the will of either party on notice to the other[.]" SDCL 60-4-4. However, an employer may waive its statutory presumption as an at-will employer either expressly or impliedly. *Aberle*, 2006 S.D. 60, ¶ 21, 718 N.W.2d at 621 (citing *Holland v. FEM Elec. Ass'n, Inc.*, 2001 S.D. 143, ¶ 12, 637 N.W.2d 717, 720). "In either regard, the employer's intent to surrender its right to terminate an employee at will must be clear." *Henning v. Avera McKennan Hosp.*, 2020 S.D. 34, ¶ 16, 945 N.W.2d 526, 531 (citing *Aberle*, 2006 S.D. 60, ¶ 22, 718 N.W.2d at 622).

[¶17.] "An express surrender occurs when the employer affirmatively indicates such intent by adopting written personnel policies or manuals that explicitly state that a for-cause termination procedure must be followed." *Aberle*, 2006 S.D. 60, ¶ 21, 718 N.W.2d at 621 (citation omitted). Under these circumstances, the employment contract must express "specific terms surrendering the statutory at-will power." *Id.* ¶ 21, 718 N.W.2d at 622 (citation omitted). An employer may also create an implied for-cause employment contract "[w]hen no explicit surrender of the statutory at-will power is made by the employer, but policies or handbooks 'contain [] a detailed list of exclusive grounds for employee discipline or discharge and a mandatory or specific procedure which the employer agrees to follow prior to any employee's termination[.]'" *Id.* (second alteration in

original) (quoting *Hollander v. Douglas Cnty.*, 2000 S.D. 159, ¶ 14, 620 N.W.2d 181, 185).

[¶18.]     This Court has made clear that a policy "memorialized in writing does not in and of itself constitute a surrender of an employer's statutory at-will power." *Id.* at ¶ 23, 718 N.W.2d at 622 (citing *Butterfield v. Citibank of S.D., N.A.*, 437 N.W.2d 857, 859 (S.D. 1989)).  An employer may set forth a written policy that outlines certain expectations of employees while maintaining an explicit reservation of its at-will employer status.  *Id.* (citing *Butterfield*, 437 N.W.2d at 860).  "Such an explicit reservation does not require the use of any specific language, but it must clearly indicate that the employer reserves the right to fire an employee at any time when it deems discharge to be appropriate."  *Id.* (citing *Butterfield*, 437 N.W.2d at 859).

[¶19.]     The acknowledgments signed by Matta at the start of his employment represent that he had read and understood the Handbook and the Policy.[4]  The Handbook acknowledgement explicitly provided "that [Matta was] considered an 'at will' employee" and that the Handbook did not "constitute a contract between [Matta] and Dakota Provisions."  The Handbook also explained that "*Dakota Provisions is an at-will employer*.  Employees are free to terminate their

---

4.     Matta argues that Dakota Provisions failed to provide a copy of the Handbook when it responded to his discovery request to provide any employee policies that were applicable to him during his employment. However, Matta admits receiving and acknowledging receipt of the Handbook when his employment began.  He did not object to the submission of the Handbook by Dakota Provisions in support of its motion for summary judgment and does not claim any prejudice by not receiving the Handbook during discovery.

employment at any time, for any reason, with or without notice and [Dakota Provisions] may terminate the employee's employment at any time, with or without cause and with or without notice." (emphasis added). Additionally, page 15 of the Handbook referenced Dakota Provisions' "Disciplinary Action Policy" and stated that "Dakota Provisions reserves the right to terminate an employee at any time for any lawful reason with or without prior disciplinary counseling or notice. Nothing in this Handbook *or any other Dakota Provisions document* is intended to . . . [m]odify [] 'at-will' employment." (emphasis added).

[¶20.]     Matta has not presented any policy in the Handbook which explicitly stated that Matta could only be terminated for cause. Matta has also failed to show how the Handbook or the Policy impliedly established a for-cause employment contract. In *Aberle*, this Court held that an implied contract waiving an employer's statutory authority to terminate employees at will "could not exist" when the employment contract included an explicit reservation of its right to terminate employees at will. 2006 S.D. 60, ¶ 25, 718 N.W.2d at 622.

[¶21.]     Like *Aberle*, here, the statements in the Handbook and the Policy unequivocally "serve[] as an explicit reservation of the right to terminate employees at any time, without notice or regard to violations of [the Handbook]." *Id.* ¶ 25, 718 N.W.2d at 622–23. While the Policy outlines specific actions that may result in termination, it expressly provides that the "attendance guidelines do not constitute a contract, expressed or implied and are not intended as limitations upon [Dakota Provisions'] judgment to expand, alter or otherwise modify them as determined by the facts of each individual situation." Thus, the Policy functioned to encourage and

discourage certain behaviors, particularly with respect to attendance, without impliedly limiting Dakota Provisions' ability to terminate its employees for any lawful reason. The circuit court did not err in concluding that Matta was an at-will employee.

### 2. Disability claim.

[¶22.] Matta also claims that his termination violated public policy as contained in SDCL 20-13-10, which prohibits employment discrimination based upon a disability for any term or condition of employment. Dakota Provisions responds that Matta is precluded from arguing he was terminated in violation of the statute because "[i]n order for a person to pursue a claim of discrimination in violation of SDCL 20-13-10, the party must first pursue a claim with the South Dakota Division of Human Rights pursuant to SDCL 20-13-29." Dakota Provisions further argues that Matta failed to identify any judicially recognized public policy that was violated when he was terminated by Dakota Provisions.

[¶23.] To the extent that Matta relies on SDCL 20-13-10 to assert a disability discrimination claim, we agree with Dakota Provisions that Matta is precluded from doing so for failing to exhaust his administrative remedies. SDCL 20-13-29 provides that "[a]ny person claiming to be aggrieved by a discriminatory or unfair practice may file with the Division of Human Rights a verified, written charge which shall state the name and address of the person or agency alleged to have committed the discriminatory or unfair practice." We have consistently required an employee claiming discriminatory treatment under SDCL chapter 20-13 to file a claim "with the Division [of Human Rights] before proceeding to circuit court."

*Wiest v. Montana,* 1998 S.D. 63, ¶ 8, 580 N.W.2d 613, 615. An employee's failure to do so, "is a palpable example of failure of a party to exhaust his/her administrative remedies and this is fatal to a discrimination claim." *Weller v. Spring Creek Resort, Inc.,* 477 N.W.2d 839, 840 (S.D. 1991) (citing *Light v. Elliott,* 295 N.W.2d 724, 725 (S.D. 1980)).

[¶24.]     Apart from the statutory employment disability discrimination claim, Matta also argues that SDCL chapter 20-13 establishes a public policy that prohibits discrimination based upon a disability. He seems to argue that termination based upon a disability creates an independent common law tort claim for a violation of public policy. *See Niesent v. Homestake Mining Co. of Cal.,* 505 N.W.2d 781, 783 (S.D. 1993) (holding that to state a cause of action under the public policy exception to the employment at-will doctrine, "the employee must plead and prove that a substantial public policy may have been violated."). However, in *Niesent* we further explained that "[p]ublic policy is found in the letter or purpose of a constitutional or statutory provision or scheme, or in a judicial decision." *Id.*

[¶25.]     Here, there is no need to create a common law tort remedy when the Legislature has created robust statutory remedies for an employee whose employment has been adversely impacted because of a disability, or other recognized protected status under SDCL chapter 20-13. We refrain from adopting new exceptions to the at-will employment doctrine absent a clearly articulable reason for doing so because "adopting unfounded public policy exceptions 'would eviscerate the at-will doctrine in favor of judicial management of employee/management relations.'" *Henning,* 2020 S.D. 34, ¶ 18, 945 N.W.2d at 531

(quoting *Harvey v. Reg'l Health Network, Inc.*, 2018 S.D. 3, ¶ 50, 906 N.W.2d 382, 397). Therefore, we decline to recognize a common law public policy exception to the at-will employment doctrine for retaliatory discharge based upon a disability. The circuit court did not error in dismissing Matta's public policy claim based upon his alleged disability.[5]

### 3. Retaliation claim for filing a workers' compensation claim.

[¶26.] Matta also asserts that the circuit court erred in granting Dakota Provisions' motion for summary judgment with respect to its alleged violation of SDCL 62-1-16 because material issues of fact remain as to whether there is a causal link between Matta filing his workers' compensation claim and his termination. Matta argues that Dakota Provisions' varying justifications for Matta's termination, and the proximity of Matta's termination to the commencement of his workers' compensation claim are "strong indicator[s] that the justification for [his] termination was pretextual." *See Phillips v. Mathews*, 547 F.3d 905, 913 (8th Cir. 2008). Dakota Provisions, on the other hand, argues that Matta failed to present

---

5. While Matta has presented evidence of a physical impairment, he has not presented any evidence that he is a disabled individual as required by the Americans with Disabilities Act (ADA). *See Faulkner v. Douglas Cnty. Neb.*, 906 F.3d 728, 732–33 (8th Cir. 2018) ("A plaintiff seeking to recover under the [ADA] must establish a prima facie case of discrimination [by establishing]: '(1) an ADA-qualifying disability; (2) qualifications to perform the essential functions of [their] position with or without reasonable accommodation; and (3) an adverse employment action due to [their] disability.'" (quoting *Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010)). While we have not had an occasion to address a disability claim under SDCL 20-13-10, we have previously recognized that SDCL 20-13-10 is comparable to the corresponding federal discrimination law. *Huck v. McCain Foods*, 479 N.W.2d 167, 169 (S.D. 1991).

any evidence that his termination was in retaliation for filing a workers' compensation claim, and emphasizes the documented concerns with Matta's work attendance before his workers' compensation claim was filed.

[¶27.] SDCL 62-1-16 provides that "[a]n employer is civilly liable for wrongful discharge if it terminates an employee in retaliation for filing a lawful workers' compensation claim." We have not previously addressed the showing necessary to prove a retaliatory discharge claim under SDCL 62-1-16. However, in other contexts, we have required an employee to present a prima facie case of retaliatory discharge by a preponderance of the evidence, by showing the employee "'(1) [] engaged [in a] protected activity; (2) [they] subsequently suffered adverse employment action; and (3) [there was] a causal link between engaging in [the] protected activity and the adverse employment action.'" *Lord v. Hy-Vee Food Stores*, 2006 S.D. 70, ¶ 18, 720 N.W.2d 443, 449–50 (fourth alteration in original) (quoting *Leslie v. Hy-Vee Foods, Inc.*, 2004 S.D. 59, ¶ 11, 679 N.W.2d 785, 789). Once a prima facie case of retaliation is established, the burden shifts to the employer to produce a legitimate justification for the employee's termination. *Leslie*, 2004 S.D. 59, ¶ 11, 679 N.W.2d at 789. The employee must then prove that the proffered reason for termination was a pretext for retaliation. *Id.* Ultimately, the employee has the burden of proving the causal relationship between the employee engaging in a protected activity and the adverse employment action. *Id.*

[¶28.] It is undisputed that Matta engaged in an activity protected by SDCL 62-1-16 when he filed a workers' compensation claim and that he subsequently suffered an adverse employment action. Thus, the dispositive issue is whether

Matta has presented facts creating a genuine issue of material fact that a causal link exists between Matta filing a workers' compensation claim and his termination.

[¶29.] When analyzing whether a causal link has been established, this Court has not required the employee to show that the protected activity was the only reason for termination, and instead we have required the employee to show the protected activity "was 'merely a contributing factor' in the decision to terminate his employment." *Lord*, 2006 S.D. 70, ¶ 20, 720 N.W.2d at 450 (quoting *Wiehoff v. GTE Directories Corp.*, 61 F.3d 588, 598 (8th Cir. 1995)). To establish a prima facie case at the summary judgment stage, this Court has determined that a close proximity in time between the protected activity and the employee's termination may create an inference of causation. *Leslie*, 2004 S.D. 59, ¶ 14, 679 N.W.2d at 790 (citing *Kipp v. Missouri Hwy. and Transp. Comm'n*, 280 F.3d 893, 896–97 (8th Cir. 2002)). *See also Mathews v. Trilogy Commc'ns, Inc.*, 143 F.3d 1160, 1166 (8th Cir. 1998) (concluding that a time lapse of two months between the protected activity and the employee's discharge may create an inference of a retaliatory motive); *and Keys v. Lutheran Fam. and Child.'s Servs. of Mo.*, 668 F.2d 356, 358 (8th Cir. 1981) (finding that less than two months between a protected activity and an adverse employment action supported an employee's prima facie case of retaliatory discharge).

[¶30.] The evidence shows that Matta was terminated approximately one month after he filed a workers' compensation claim in early April. The proximity between Matta's workers' compensation claim and his termination may be sufficient to create a prima facie showing of a causal link between the two events, but Dakota Provisions has set forth attendance issues during Matta's probationary period as

the legitimate reason for his termination. Thus, for summary judgment purposes Matta had the burden to present facts creating a genuine issue of material fact that Dakota Provisions' stated reason for termination was pretextual. *See Lord*, 2006 S.D. 70, ¶ 19, 720 N.W.2d at 450 ("If the defendant produces a legitimate, nonretaliatory reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason is merely a pretext for retaliation.").

[¶31.] At summary judgment, when considering whether Dakota Provisions' justification was pretextual, we must review the facts in the light most favorable to Matta. *See Johnson v. Matthew J. Batchelder Co., Inc.*, 2010 S.D. 23, ¶ 8, 779 N.W.2d 690, 693 ("[W]e view all evidence and favorable inferences from that evidence in a light most favorable to the nonmoving party." (alteration in original) (quoting *Stone v. Von Eye Farms*, 2007 S.D. 115, ¶ 6, 741 N.W.2d 767, 769)). "[M]ore substantial evidence of [retaliation] is required to prove pretext, because evidence of pretext is viewed in the light of [the defendant's] legitimate, non-[retaliatory] explanation." *Davis v. Wharf Res. (USA), Inc.*, 2015 S.D. 61, ¶ 30, 867 N.W.2d 706, 717 (alterations in original) (quoting *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 992 (8th Cir. 2006)).

[¶32.] The facts, when viewed in the light most favorable to Matta, show that he was initially written up for attendance issues before filing a workers' compensation claim and written up a second time and disciplined after filing for benefits. Immediately prior to his termination, Matta reaggravated his injury on April 30, and never returned to work. Dakota Provisions admitted to receiving

Matta's doctor's note on May 1 recommending Matta remain off work until further notice. The same day, Dakota Provisions placed a personnel action form into Matta's personnel file, indicating that he was terminated on May 1, 2020, for "poor attendance during probationary period." Matta was not informed of his termination for more than a week and a half. Further, when Matta's attorney inquired about Matta's termination, Dakota Provisions represented that Matta was terminated on May 6, 2020, for missing work on May 1, 4, and 5 without notifying Dakota Provisions. The letter from the HR Director represented that "this constitutes grounds for termination as it is 3 days in a row—no call no show."

[¶33.] Matta argues that these varying dates and reasonings indicate that Dakota Provisions' justification for terminating him was pretextual. However, courts have indicated changes in the employer's stated reasons for its employment decision must change substantially over time to support a finding of pretext. *See Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 883 (8th Cir. 2005) ("Substantial changes over time in the employer's proffered reason for its employment decision [may] support a finding of pretext." (alteration in original) (citation omitted)). Thus "slight elaborations" or further explanation of its employment decision generally are not sufficient to provide a showing of pretext. *Id.* (citation omitted).

[¶34.] A review of the record in the light most favorable to Matta, presents conflicts between the dates Dakota Provisions stated he was terminated and the reason for his termination. The personnel form prepared by Dakota Provisions on May 1 shows that Matta was terminated for attendance issues that occurred prior to May 1. However, Dakota Provisions' HR Director later indicated in a letter

written to Matta's attorney that Matta was terminated on May 6 because he missed three consecutive days of work on May 1, 4 and 5 without notifying Dakota Provisions. Not only does this explanation differ from the specific dates that were offered in Dakota Provisions' original justification for terminating Matta, but it is also inconsistent with the facts available in the record. Dakota Provisions admitted to receiving Matta's doctor's note on May 1 stating that Matta should not return to work until he was able to be seen by an orthopedist on May 6.[6] Thus, Dakota Provisions was informed that Matta would not be able to work until after that date.

[¶35.] Viewing the evidence in the light most favorable to Matta, a reasonable jury could infer that his termination was a pretext for retaliation against him for filing a workers' compensation claim based upon the proximity of the termination to the filing of his claim, the change in the stated termination dates, and the inconsistent reasons provided for the termination. *See Logan*, 416 F.3d at 883. This is even more true when the second reason offered by Dakota Provisions is unsupported by the undisputed evidence in the record before this Court. *See id.* at 881 ("One method of proving pretext is to show that the employer's proffered explanation has no basis in fact." (citation omitted)). Thus, genuine issues of material facts remain as to whether Matta was terminated in retaliation for filing a lawful workers compensation claim in violation of SDCL 62-1-16, and summary judgment should not have been granted on this claim.

---

6.   In response to Matta's statement of undisputed facts, Dakota Provisions admitted that "[t]he said no work order was provided to Dakota Provisions on May 1, 2020, stating that [Matta] would be 'off work' until he could see an orthopedic doctor which was scheduled for May 6, 2020."

## Conclusion

[¶36.] We affirm the circuit court's grant of summary judgment as to Matta's claim that he was terminated in violation of the alleged contract created by the Policy as well as Matta's claim that his termination violated public policy as stated in SDCL 20-13-10. We reverse the circuit court's grant of summary judgment with respect to Matta's claim for retaliatory discharge in violation of SDCL 62-1-16 and remand for further proceedings.

[¶37.] KERN, SALTER, DEVANEY, and MYREN, Justices, concur.