#27615, #27626, #27631-r-GAS
**2016 S.D. 75**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

(#27615)

RYAN NOVOTNY,                                         Plaintiff and Appellee,

v.

SACRED HEART HEALTH
SERVICES, a South Dakota
Corporation d/b/a AVERA SACRED
HEART HOSPITAL, AVERA HEALTH,
a South Dakota Corporation,                           Defendants and Appellants,

and

ALLEN A. SOSSAN, D.O. also known
as ALAN A. SOOSAN, also known as
ALLEN A. SOOSAN, RECONSTRUCTIVE
SPINAL SURGERY AND ORTHOPEDIC
SURGERY, P.C., a New York Professional
Corporation, LEWIS & CLARK
SPECIALTY HOSPITAL, LLC, a South
Dakota Limited Liability Company,                      Defendants.

-------------------------------------------------------------------------------------------------------------------

(#27626)

CLAIR ARENS and DIANE ARENS,                          Plaintiffs and Appellees,

v.

CURTIS ADAMS, DAVID BARNES,
MARY MILROY, ROBERT NEUMAYR,
MICHAEL PIETILA, and DAVID WITHROW,                   Defendants and Appellants,

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BRUCE V. ANDERSON
Judge

* * * *

ARGUED OCTOBER 4, 2016
OPINION FILED **10/26/16**

and

ALAN A. SOSSAN, also known as
ALLEN A. SOOSAN, also known as
ALLEN A. SOOSAN, D.O., SACRED
HEART HEALTH SERVICES, a South
Dakota Corporation d/b/a AVERA SACRED
HEART HOSPITAL, AVERA HEALTH, a
South Dakota Corporation, MATTHEW
MICHELS, THOMAS BUTTOLPH, DOUGLAS
NEILSON, CHARLES CAMMOCK, LEWIS
& CLARK SPECIALTY HOSPITAL, LLC, a
South Dakota Limited Liability Company,
DON SWIFT, DAVID ABBOTT, JOSEPH
BOUDREAU, PAULA HICKS, KYNAN TRAIL,
SCOTT SHINDLER, TOM POSCH,
DANIEL JOHNSON, NUETERRA
HEALTHCARE MANAGEMENT, LLC,
VARIOUS JOHN DOES and
VARIOUS JANE DOES,                                    Defendants.

-------------------------------------------------------------------------------------------------------------------
(#27631)

CLAIR ARENS and DIANE ARENS,                          Plaintiffs and Appellees,

        v.

LEWIS & CLARK SPECIALTY HOSPITAL,
LLC, a South Dakota Limited Liability
Company,                                             Defendant and Appellant,

        and

ALLEN A. SOSSAN, D.O. also known as
ALAN A. SOOSAN, also known as
ALLEN A. SOOSAN, RECONSTRUCTIVE
SPINAL SURGERY AND ORTHOPEDIC
SURGERY, P.C., a New York Professional
Corporation, SACRED HEART HEALTH
SERVICES, a South Dakota Corporation,
d/b/a AVERA SACRED HEART HOSPITAL,
AVERA HEALTH, a South Dakota Corporation,
DON SWIFT, D.M., KYNAN TRAIL, M.D.
CURTIS ADAMS, DAVID BARNES,
THOMAS BUTTOLPH, MARY MILROY,
DOUGLAS NEILSON, ROBERT NEUMAYR,
MICHAEL PIETILA, CHARLES CAMMOCK,
DAVID WITHROW, VARIOUS JOHN DOES,
and VARIOUS JANE DOES,                                Defendants.

\* \* \* \*

LESLIE A. BRUECKNER of
Public Justice, P.C.
Oakland, California

MICHAEL D. BORNITZ
ROBERT D. TRZYNKA
BRENDAN F. PONS of
Cutler Law Firm, LLP
Sioux Falls, South Dakota

     and

TIMOTHY L. JAMES of
James & Larson Law
Yankton, South Dakota                Attorneys for plaintiffs and
                                     appellees.

EDWIN E. EVANS
MARK HAIGH of
Evans, Haigh & Hinton, LLP
Sioux Falls, South Dakota                Attorneys for defendants and
                                     appellants Curtis Adams, David
                                     Barnes, Mary Milroy, Robert
                                     Neumayr, Michael Pietila &
                                     David Withrow #27626.

ROGER A. SUDBECK
MATTHEW D. MURPHY of
Boyce Law Firm, LLP
Sioux Falls, South Dakota                Attorneys for defendants and
                                       appellants Sacred Heart Health
                                     Services & Avera Health
                                     #27615.

JEFF WRIGHT
JOHN GRAY of
Heidman Law Firm, LLP
Sioux City, Iowa                              Attorneys for defendant and
                                       appellant Lewis & Clark
                                     Specialty Hospital, LLC
                                   #27631.

GREGORY J. BERNARD of
Thomas Braun
 Bernard & Burke, LLP
Rapid City, South Dakota                Attorneys for defendant and
                                     appellant Kynan Trail joining
                                   #27631.

SEVERSON, Justice

[¶1.] In this action against various health organizations and individuals involved at those organizations, Plaintiffs moved to compel production of peer review materials and asked the circuit court to find SDCL 36-4-26.1, which grants privilege to peer review materials, unconstitutional. The circuit court determined that the statute was constitutional but only if it applied a "crime-fraud exception." It determined that the exception had been met and ordered Defendants to produce, without in camera review, "objective information gathered or considered by the peer review committees." The court also ordered any other "remaining materials" to be submitted to the court for in camera review. We granted Defendants' petition for intermediate appeal. Defendants assert that the court erred by compelling production of third-party items held by a peer review committee and by creating a crime-fraud exception to SDCL 36-4-26.1. We reverse and remand.

## Background

[¶2.] Plaintiffs in this action, Ryan Novotny and Clair Arens, were treated by Dr. Alan Sossan. After treatment, Plaintiffs filed lawsuits against Dr. Sossan, his medical clinic, Avera Sacred Heart Hospital, Lewis & Clark Specialty Hospital, and other individual defendants, collectively referred to throughout this opinion as Defendants. The Plaintiffs alleged various causes of action including negligence, negligent credentialing, fraud, deceit, bad faith peer review, unjust enrichment, racketeering, and conspiracy. When Plaintiffs sought production of documents from Defendants, Defendants asserted that some of the materials sought were peer review materials protected under SDCL 36-4-26.1. Plaintiffs moved to compel

production and asked the circuit court to determine that SDCL 36-4-26.1, protecting "[t]he proceedings, records, reports, statements, minutes, or any other data whatsoever, of any committee described in § 36-4-42[,]" is unconstitutional.

[¶3.]     The court held a hearing on the matter and issued a memorandum decision.[1] It determined that SDCL 36-4-26.1 is constitutional only if an exception applies. Therefore, it created and applied a "crime-fraud exception." Under its exception, the court determined that Plaintiffs "submitted sufficient evidence to make out a prima facie case of fraud and deceit sufficient for [the] court to allow access to the peer review records of the Defendants." It determined that an in camera review was not necessary before production of some peer review material to Plaintiffs. It directed that the "objective information gathered or considered by the peer review committees . . . shall be disclosed and copies provided to Plaintiff's counsel under a protective order without in camera inspection, as that information is not considered private deliberative information as contemplated by the statute."[2]

---

1.     The court directed the memorandum decision to be filed in all of the cases that it collectively referred to as the "Sossan Litigation." There are multiple cases pending before the circuit court that involve the peer review question.

2.     The court ordered production of the following documents from the peer review committees under the theory that they contained objective information not subject to protection:

> (1) [T]he applications submitted by Dr. Sossan in order to obtain privileges
>
> (2) [A]ll attachments and collateral information that were attached to those applications
>
> (3) [A]ll documents that were generated or obtained by the peer review committees to obtain other background information of Dr. Sossan, including any criminal background checks . . . and all materials

(continued . . .)

-2-

It further directed that the remaining materials be submitted to the circuit court for in camera review with a privilege log as required.

[¶4.]	We granted Defendants' petition for an intermediate appeal from the circuit court's order. Defendants contend that the court erred in two aspects. First, Defendants assert that the court erred by compelling peer review committees to produce documents obtained by the committees from independent sources. Second, Defendants maintain that the court erred by judicially creating a crime-fraud exception to SDCL 36-4-26.1.[3]

_____

(. . . continued)

received by the peer review committees from the National Medical Practitioners Databank, if any

(4) [A]ny other objective information they received in their due diligence endeavor to make 'reasonable effort to obtain the facts of the matter under consideration'

(5) [A]ll complaints filed against Dr. Sossan by any person or other medical provider . . . between the time Dr. Sossan was granted privileges at their facilities and his termination, and any final resolution or other action taken as a result of such complaint.

3.	In the course of these cases, the circuit court addressed a number of issues of first impression and made various determinations that we are not deciding in this intermediate appeal. The circuit court determined that this Court would recognize a common law action of negligent credentialing. Although we are addressing discovery issues on such a claim, we offer no decision on whether we would recognize that claim in this State. In addition, Defendants have indicated that they may appeal the circuit court's determination "that hospitals owe an independent physician's patients more than a reasonable hospital duty, but actually owe those patients a fiduciary duty." We do not decide that matter. Nor do we decide whether the claims presented by Plaintiffs are medical malpractice ones barred by the statute of limitations. Finally, we do not consider whether the information in dispute is protected by any federal provisions.

## Standard of Review

[¶5.]    "Ordinarily, 'we review the circuit court's rulings on discovery matters under an abuse of discretion standard.'" *Milstead v. Smith*, 2016 S.D. 55, ¶ 7, 883 N.W.2d 711, 716 (quoting *Anderson v. Keller*, 2007 S.D. 89, ¶ 5, 739 N.W.2d 35, 37). "However, when we are asked to determine whether the circuit court's order violated a statutory privilege, it raises a question of statutory interpretation requiring de novo review." *State v. Vargas*, 2015 S.D. 72, ¶ 19, 869 N.W.2d 150, 158 (quoting *Andrews v. Ridco*, 2015 S.D. 24, ¶ 14, 863 N.W.2d 540, 546).

## Analysis

[¶6.]    We have not previously addressed the questions whether litigants may discover independent–source material directly from a peer review committee or whether an exception to SDCL 36-4-26.1 exists. We address these narrow issues in this intermediate appeal. First, we consider whether Plaintiffs may obtain materials directly from peer review committees.

[¶7.]    SDCL 36-4-42 establishes that:

> a peer review committee is one or more persons acting as any committee of a state or local professional association or society, any committee of a licensed health care facility or the medical staff of a licensed health care facility, or any committee comprised of physicians within a medical care foundation, health maintenance organization, preferred provider organization, independent practice association, group medical practice, provider sponsored organization, or any other organization of physicians formed pursuant to state or federal law, that engages in peer review activity. For the purposes of this section, a peer review committee is also one or more persons acting as an administrative or medical committee, department, section, board of directors, shareholder or corporate member, or audit group, including the medical audit committee, of a licensed health care facility.

Peer review committees engage in activities defined by SDCL 36-4-43:

> For the purposes of §§ 36-4-25, 36-4-26.1 and 36-4-42, peer review activity is the procedure by which peer review committees monitor, evaluate, and recommend actions to improve the delivery and quality of services within their respective facilities, agencies, and professions, including recommendations, consideration of recommendations, actions with regard to recommendations, and implementation of actions. Peer review activity and acts or proceedings undertaken or performed within the scope of the functions of a peer review committee include:
>
> (1) Matters affecting membership of a health professional on the staff of a health care facility or agency;
>
> (2) The grant, delineation, renewal, denial, modification, limitation, or suspension of clinical privileges to provide health care services at a licensed health care facility;
>
> (3) Matters affecting employment and terms of employment of a health professional by a health maintenance organization, preferred provider organization, independent practice association, or any other organization of physicians formed pursuant to state or federal law;
>
> (4) Matters affecting the membership and terms of membership in a health professional association, including decisions to suspend membership privileges, expel from membership, reprimand, or censure a member, or other disciplinary actions;
>
> (5) Review and evaluation of qualifications, competency, character, experience, activities, conduct, or performance of any health professional, including the medical residents of health care facility; and
>
> (6) Review of the quality, type, or necessity of services provided by one or more health professionals or medical residents, individually or as a statistically significant group, or both.

[¶8.]     The privilege granted to materials of a peer review committee is found

in SDCL 36-4-26.1.  It provides:

> The proceedings, records, reports, statements, minutes, or any other data whatsoever, of any committee described in § 36-4-42, relating to peer review activities defined in § 36-4-43, are not subject to discovery or disclosure under chapter 15-6 or any other provision of law, and are not admissible as evidence in any action of any kind in any court or arbitration forum, except as hereinafter provided. No person in attendance at any meeting of any committee described in § 36-4-42 is required to testify as to what transpired at such meeting. The prohibition relating to discovery of evidence does not apply to deny a physician access to or use of information upon which a decision regarding the person's staff privileges or employment was based. The prohibition relating to discovery of evidence does not apply to deny any person or the person's counsel in the defense of an action against that person access to the materials covered under this section.

The circuit court determined that the statute contemplates deliberative information and therefore objective information within the committee's possession was not subject to the privilege.

[¶9.]     The statute's language "of any committee" encompasses and protects "[t]he proceedings, records, reports, statements, minutes, or any other data whatsoever" that is within the committee's possession if it "relat[es] to peer review activities defined in § 36-4-43," regardless of its origin. SDCL 36-4-26.1; 36-4-43. The circuit court was correct that the statute protects deliberative information. However, the broad language protects more than deliberative materials. *See Shamburger v. Behrens*, 380 N.W.2d 659, 665 (S.D. 1986) ("[S]taff competency evaluations are not discoverable materials" under SDCL 36-4-26.1.). Peer review activity is broader than deliberation as it is defined as "the *procedure* by which peer review committees *monitor, evaluate, and recommend actions* to improve the delivery and quality of services within their respective facilities, agencies, and professions, *including recommendations, consideration of recommendations, actions*

*with regard to recommendations*, and *implementation of actions*." SDCL 36-4-43 (emphasis added).

[¶10.]      Furthermore, the ordinary meaning of the statutory terms *records* and *any other data whatsoever* encompasses objective facts. *See Krusac v. Covenant Med. Ctr., Inc.*, 865 N.W.2d 908, 913 (determining that the ordinary meaning of the statutory terms *record* and *data* encompass objective facts). Such an interpretation is further supported by the statute's exceptions. Although the exceptions are not issues in this appeal, the language of the exceptions is important when construing the language in SDCL 36-4-26.1. *See In re Petition for Declaratory Ruling re SDCL 62-1-1(6)*, 2016 S.D. 21, ¶ 9, 877 N.W.2d 340, 344 ("[W]e give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject."). One of the two exceptions to the privilege allows a physician "access to or use of information upon which a decision regarding the person's staff privileges or employment was based." SDCL 36-4-26.1; SDCL 36-4-26.2. The ordinary meaning of *information* includes objective facts. Thus, if the Legislature did not contemplate or intend that the statute protect objective facts then it would not have needed to create such an exception.

[¶11.]      Defendants concede that some documents within the possession of a peer review committee may be discovered from other sources. Defendants have referred this Court to numerous decisions from other jurisdictions generally holding that litigants may obtain, from independent sources, some documents given to peer review committees. Many of those cases interpret state statutes that explicitly

address the issue.[4] South Dakota does not have a similar provision. Our statutes are silent on documents that peer review committees obtain from other sources.

[¶12.] Relying on and quoting *Wheeling Hospital*, Sacred Heart advocates for the following rule:

> information created by or at the behest of a peer review committee, including a physician's application for privileges, is protected and remains protected at all times, regardless of who obtains it; items from independent sources, not generated at the behest of a committee, which were gathered and/or reviewed by a peer review committee do not become privileged simply because a committee gathered and/or reviewed them; and such independent source items are discoverable "from the *original, external sources,* but not from the peer review committee, itself."

According to Defendants, information "not generated [by or] at the behest of a committee" falls outside of the protection of SDCL 36-4-26.1.

---

4. *See Ex parte Qureshi*, 768 So.2d 374, 378 (Ala. 2000) (addressing Ala. Code § 22-21-8(b), which stated in part that "[i]nformation, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented or used in preparation of [peer review activities]"); *McGee v. Bruce Hosp. Sys.*, 439 S.E.2d 257, 259 (S.C. 1993) (interpreting S.C. Code Ann. § 40-71-20 providing, "[i]nformation, documents, or records which are otherwise available from original sources are not immune from discovery or use in a civil action merely because they were presented during the committee proceedings"); *Day v. Finley Hosp.*, 769 N.W.2d 898, 901 (Iowa Ct. App. 2009) (construing Iowa Code § 147.135(2), which provided that "[i]nformation or documents discoverable from sources other than the peer review committee do not become nondiscoverable from the other sources merely because they are made available to or are in the possession of a peer review committee"); *State ex rel. Wheeling Hosp., Inc. v. Wilson*, 782 S.E.2d 622, 630 (W. Va. Ct. App. 2016) (determining scope of discovery under W. Va. Code § 30-3C-3 (1980) providing in part that "information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during the proceedings of such organization").

[¶13.]     Such a rule is consistent with our broad statutory scheme. By their plain language, the statutes protect the "proceedings, records, reports, statements, minutes, or any other data whatsoever . . . relating to" the "procedure by which [a] peer review committee" engages in its functions. SDCL 36-4-26.1; SDCL 36-4-42; SDCL 36-4-43. Protection of information generated "by or at the behest of a peer review committee" protects the peer review process as contemplated by the statutory scheme. At the same time, it prevents an unreasonably broad application of the privilege, such as protecting documents simply because the committee received them. *See State v. Karlen*, 1999 S.D. 12, ¶ 31, 589 N.W.2d 594, 601 ("[P]rivileges are to be construed narrowly as they constitute a barrier to the search for truth."). The rule balances the interests that the medical community and the public have in both allowing frank and effective peer review and in uncovering and recovering from acts of fraud, deceit, and the like. *See Pawlovich v. Linke*, 2004 S.D. 109, ¶ 14, 688 N.W.2d 218, 223 (recognizing "the important role played by doctors, attorneys[,] and other professionals in reviewing members of their respective profession. Professional societies, through peer review, can and do perform a great public service by exercising control over those persons placed in a position of public trust."). It is evident that the purpose of the peer review statute is to encourage full candor in the peer review process, and that policy is advanced when information created by or at the behest of a peer review committee is protected. Although Plaintiffs are not entitled to discover any of the materials within the peer review committee's possession, Plaintiffs and Defendants may obtain information from other sources in accordance with the rule stated above.

*The constitutionality of SDCL 36-4-26.1*

[¶14.]     In light of the broad protection granted under SDCL 36-4-26.1, the circuit court determined that the statute did not pass constitutional scrutiny unless it applied an exception. Accordingly, it crafted and applied a "crime-fraud exception." It appears that the circuit court determined that the exception was necessary in order to protect Plaintiffs' constitutional right to open courts. Plaintiffs also seem to assert that the exception is necessary to guarantee their right to procedural due process. The court determined that the statute survived a substantive due process challenge, and the parties have not asked us to reconsider that determination in this intermediate appeal.

[¶15.]     First, we consider Plaintiffs' right to procedural due process. "To establish a procedural due process violation, a plaintiff must demonstrate that he has a protected property or liberty interest at stake and that he was deprived of that interest without due process of law." *Osloond v. Farrier*, 2003 S.D. 28, ¶ 16, 659 N.W.2d 20, 24 (quoting *Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999)). "[T]he individual must be deprived of this right by a state actor." *Id.*.

[¶16.]     Plaintiffs invite us to weigh the public policy of peer review confidentiality against their need for evidence and of revealing instances of bad faith peer review. However, neither the circuit court nor Plaintiffs have identified a protected liberty or property interest at stake that has been deprived by the State. Instead, it appears that Plaintiffs assert that their due process is violated by the privilege because it violates their constitutional right to have a remedy by due course of law. The right to have a remedy by due course of law is a separate

constitutional right under S.D. Const. art. VI, § 20. *See infra* ¶ 19. "A property interest worthy of due process protection must be granted or defined by a source independent from the Constitution, such as state law." *Hollander v. Douglas Cty*, 2000 S.D. 159, ¶ 12, 620 N.W.2d 181, 185.

[¶17.]        Plaintiffs primarily rely on *Adams v. St. Francis Regional Medical Center*, 955 P.2d 1169, 1184 (Kan. 1998), to contend that their constitutional rights are violated under SDCL 36-4-26.1 and that the privilege must yield to their interest in peer review materials. *Adams* is distinguishable. In *Adams*, parents alleged that their daughter died due to negligent treatment provided by a doctor and medical center. *Adams*, 955 P.2d at 1171. Plaintiffs' attorney obtained an investigation file, including disciplinary forms, from the State Board of Nursing and used the information within those documents in depositions. *Id.* at 1172. The medical center sought a protective order limiting the use of the documents. It contended that the Board had violated confidentiality statutes and that disciplinary forms "were prepared in conjunction with peer review" and thus protected. *Id.* The lower court determined that the documents were "privileged and [it] quashed depositions of persons named in them[.]" *Id.* at 1180. The Kansas Supreme Court explained that this effectively prevented plaintiffs "from developing facts that they could have and probably would have developed had it not been for plaintiffs' obtaining information from the Board's documents." *Id.* The court noted that "[t]he dilemma thus created for the plaintiffs runs counter to at least one of the principles that traditionally guide courts in making decisions concerning confidential material—that a party is required to exhaust available alternative sources of

information before seeking a court's order compelling discovery." *Id.* After weighing plaintiffs' right to due process and the interest in creating a peer review privilege, the court determined that the lower "court's protective order and order granting other discovery relief denied plaintiff . . . access [(to relevant facts)] and thus violated plaintiffs' right to due process and a fair determination of their malpractice action against the defendants." *Id.* at 1187.

[¶18.]     The situation that existed in *Adams* does not exist in this case. Plaintiffs have not demonstrated that they have no other access to information necessary for the causes of action that they are claiming. Plaintiffs' causes of action of fraud and deceit and negligent credentialing do not require evidence directly from the peer review committee. Minnesota's Supreme Court has explained that "negligence [can] be shown on the basis of what was actually known or what *should have been known* at the time of the credentialing decision." *Larson v. Wasemiller*, 738 N.W.2d 300, 310 (Minn. 2007) (determining that because "the confidentiality provisions of the peer review statute do not preclude the presentation of evidence in defense of a negligent–credentialing claim, . . . the confidentiality provision is not facially unconstitutional"). Similarly, deceit includes "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true[.]" SDCL 20-10-2 (2). Thus, Plaintiffs, who have provided the circuit court with affidavits that set forth information given to the committee, have demonstrated that they are able to obtain evidence that goes to the heart of their claims. In addition, we have explained what information Plaintiffs may obtain from sources other than a peer review committee.

[¶19.]     We next address the circuit court's determination that a "crime-fraud exception" is necessary to protect Plaintiffs' constitutional right to open courts. S.D. Const. art. VI, § 20 provides: "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay." According to the court, Plaintiffs asserted that the privilege violates their right of access to the courts "by depriving them of the best and most relevant information to establish their claim of fraud and deceit or that the peer review committees here acted improperly or in bad faith." Notably, the Plaintiffs have not provided authority for the proposition that their right under S.D. Const. art. VI, § 20 is violated when a litigant is denied access to the best and most relevant information to establish their claim. "We have interpreted the 'open courts' provision as a 'guarantee that for such wrongs as are recognized by the laws of the land the courts shall be open and afford a remedy.'" *Green v. Siegel, Barnett & Schutz*, 1996 S.D. 146, ¶ 13, 557 N.W.2d 396, 399-400 (quoting *Kyllo v. Panzer*, 535 N.W.2d 896, 901). "We have held that reasonable conditions on a cause of action are not unconstitutional." *Id.*

[¶20.]     The Connecticut Supreme Court has addressed this issue in the context of its psychiatrist-patient privilege. *See Falco v. Institute of Living*, 757 A.2d 571, 577 (Conn. 2000). Similar to South Dakota, Connecticut's constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Conn. Const. art. I, § 10. In *Falco*, the Connecticut Supreme Court determined that its "right to redress"

provision does not permit the court to override the psychiatrist-patient privilege. *Id.* at 577. It further explained that it was "unpersuaded that the right to redress is implicated at all," finding that "[t]he psychiatrist-patient privilege merely restricts the discovery and the availability of evidence . . . the . . . privilege is no different from other common privileges such as the attorney-client or spousal privileges" and plaintiff "failed to demonstrate that the privilege limits or impairs the cause of action itself." *Id.*

[¶21.]        Likewise, South Dakota's peer review privilege does not restrict or destroy Plaintiffs' ability to bring their causes of action. *See Green*, 1996 S.D. 146, ¶ 33, 557 NW.2d at 405 (holding that statute of limitations did not "restrict or destroy the right to bring a cause of action for legal malpractice, but rather, only establish[ed] the period of time in which a plaintiff must assert this right."). Although the peer review privilege prevents Plaintiffs from discovering material directly from a peer review committee, it does not bar causes of action or abolish the remedy for those actions. Additionally, as we now hold, Plaintiffs may obtain some of the information given to the peer review committees from independent sources.

[¶22.]        The circuit court and Plaintiffs note that the "crime-fraud exception" is necessary to ensure that the privilege is not abused. They point out that other privileges have a similar exception, such as the crime or fraud exception to the attorney-client privilege. That exception is a codified one. *See* SDCL 19-19-502(d)(1) ("There is no privilege under this section: (1) Furtherance of crime or fraud. If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known

to be a crime or fraud[.]"). This Court has recognized a limited exception to the spousal privilege. In *State v. Witchey*, 388 N.W.2d 893 (S.D. 1986), we determined that where a witness spouse is an active participant in patently criminal activity, the defendant may not prevent the "spouse's voluntary testimony about a communication during joint participation in a crime because that communication does not fall within the definition of SDCL [19-19-504]." We created such an exception despite the fact that the Legislature has recognized other exceptions to the privilege and the joint-participant exception is not among them. *See* SDCL 19-19-504.

[¶23.]     Nevertheless, carving out an exception in this case is a task better left for the Legislature, which by statute created the peer review privilege. Despite the existence of crime or fraud exceptions to other privileges, in this case, we need not recognize ones in addition to the statutory ones found in SDCL 36-4-26.1 and SDCL 36-4-26.2. Plaintiffs may obtain certain information from independent sources. The availability of that information from sources outside the peer review committees allows Plaintiffs access to information that may expose alleged fraudulent activity and allow Plaintiffs to present their case. Their right to open courts is not violated.

## Conclusion

[¶24.]     The circuit court erred when it ordered Defendants to produce materials in the possession of medical peer review committees. Furthermore, no crime-fraud exception exists to SDCL 36-4-26.1. We reverse and remand with instructions to vacate the circuit court's order compelling production of documents protected by peer review.

#27615, #27626, #27631

[¶25.] GILBERTSON, Chief Justice, and MYREN and CUTLER, Circuit Court Judges, and STEELE, Retired Circuit Court Judge, concur.

[¶26.] MYREN, Circuit Court Judge, sitting for ZINTER, Justice, disqualified.

[¶27.] CUTLER, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.

[¶28.] STEELE, Retired Circuit Court Judge, sitting for KERN, Justice, disqualified.