#29081-a-PJD
**2020 S.D. 34**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STEPHANIE HENNING,                    Plaintiff and Appellant,

    v.

AVERA MCKENNAN HOSPITAL,              Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBIN J. HOUWMAN
Judge

* * * *

SCOTT G. HOY of
Hoy Trial Lawyers, Prof. LLC
Sioux Falls, South Dakota

MICHAEL W. STRAIN of
Strain Morman Law Firm
Sturgis, South Dakota                 Attorneys for plaintiff and
                                      appellant.


LISA HANSEN MARSO
MATTHEW D. MURPHY of
Boyce Law Firm, LLP
Sioux Falls, South Dakota             Attorneys for defendant and
                                      appellee.

* * * *

CONSIDERED ON BRIEFS
APRIL 20, 2020
OPINION FILED **06/17/20**

DEVANEY, Justice

[¶1.]        Avera McKennan Hospital terminated Stephanie Henning, a nurse in its intensive care unit, after it discovered errors in Henning's documentation of controlled substances.  Henning brought suit against Avera alleging multiple claims including: wrongful discharge, breach of contract, and defamation.  The circuit court granted Avera summary judgment on all claims.  Henning appeals, and we affirm.

**Factual and Procedural Background**

[¶2.]        Avera McKennan Hospital hired Stephanie Henning as a registered nurse in its intensive care unit in the fall of 2014.  As part of its regular internal process, Avera tracks the handling of controlled substances by Avera employees to identify possible drug diversion issues.  Avera uses an automated medication dispensing system to track medications administered to patients.  Avera explained that its dispensing system logs when each employee accesses the system and withdraws certain medications.  The employee must then track the medications by scanning the bar code at the time they are administered to patients or by manually entering into the system the time and amount administered.  To account for waste, the employee must also note whether any of the withdrawn medications were not administered.  Avera then uses the dispensing system to generate reports showing the information tracked.

[¶3.]        In March 2016, the report run by Avera indicated an atypically high removal rate of Fentanyl by Henning in comparison to her coworkers between March 1, 2015 and March 1, 2016.  Avera assigned a review committee consisting of Henning's nurse manager (Amy Boyd), a pharmacist, and a nurse to conduct a more

thorough review of Henning's charts. The reviewers examined 16 charts and issued a written summary of their findings. The summary revealed 12 areas of concern, including that they could not account for 275 micrograms of Fentanyl, 3 milligrams of Ativan, and 3 milligrams of Hydromorphone under Henning's possession and control.[1] The summary further indicated that Henning did not scan 66 of the 669 medications to denote that the medications removed by her had been administered to a patient, the time of administration, and whether there was any leftover medication. Avera observed that these scanning errors would not on their own be concerning, but the fact that a large portion of the errors related to Fentanyl raised a red flag.

[¶4.]        On March 28, Henning arrived for her scheduled shift, but instead of beginning her duties, she was asked to meet with Boyd and Teresa Frederick from Human Resources. At the meeting, Boyd and Frederick presented Henning with the information obtained during the committee's review of Henning's charts. According to Henning, Frederick told her that she would be reported to the South Dakota Board of Nursing for suspected drug diversion unless she accounted for the drugs she had removed but did not properly document in the dispensing system. Henning denied any wrongdoing.

[¶5.]        At some point during the meeting, Agent Doug Heilman from the Department of Criminal Investigation (DCI) came into the room. Avera had

---

1.     Avera also related that the dollar value of the drugs unaccounted for is $7.00. The report to the Department of Health included greater amounts of unaccounted for drugs: 325 micrograms of Fentanyl, 4 milligrams of Ativan, and 3.0 milligrams of Hydromorphone.

contacted the DCI to report possible drug diversion or a discrepancy/potential discrepancy in the tracking of controlled substances. The record suggests that Boyd and Frederick left the room while Agent Heilman questioned Henning. Henning points out that Agent Heilman told her he was there to help and that no one would be arrested that day. During Heilman's interview, Henning denied any use of narcotics and any sale or diversion of drugs. That same day, she also underwent a urinalysis, which, according to Henning, later came back negative for any of the controlled substances allegedly diverted.[2]

[¶6.] Avera terminated Henning after the interview due to her documentation errors and her inability to account for the controlled substances removed from the dispensing system. Following her termination, Henning sent text and Facebook messages to at least 13 of her coworkers claiming that Avera had accused her of stealing narcotics and that Avera terminated her for documentation errors.

[¶7.] The next day, Avera reported Henning's suspected drug diversion to the South Dakota Board of Nursing. Henning had already self-reported. The Board conducted an independent investigation, and Henning hired counsel to represent her in the process. Following its investigation, the Board issued a confidential letter of concern and ordered Henning to attend counseling with the Health Professionals Assistance Program and complete remedial education. In early April 2016, Avera similarly reported Henning's suspected drug diversion to the South

---

2. The report from the urinalysis is not in the record; however, Avera has not disputed Henning's assertion that the results were negative.

Dakota Department of Health, the Drug Enforcement Agency (DEA), and the South Dakota Board of Pharmacy. Each entity investigated the report and did not take action against Henning.

[¶8.] In September 2017, Henning brought suit against Avera alleging that Avera accused her without sufficient evidence or cause of stealing controlled substances and ingesting or selling them. She asserted that Avera's "breach of contract and tortious actions" caused her to lose "her job and her ability to find like work" and caused her to have to retain counsel to defend the allegations before the Board of Nursing. Henning further claimed that she suffered the loss of past and future wages, mental and emotional distress, loss of enjoyment of life, and other personal injuries. Finally, she alleged that Avera's actions constituted libel and slander.

[¶9.] Avera moved for summary judgment on all of Henning's claims, arguing that Henning could not, as a matter of law, prove wrongful termination or breach of contract because she was an at-will employee. Avera further asserted that no issue of material fact was in dispute on Henning's libel and slander claims because Avera reported the truth, and that its reporting to the governmental agencies was privileged and without malice. In response, Henning asserted that she was entitled to due process prior to being discharged because of Avera's controlled substance use policy and further asserted that a public policy exception to the at-will doctrine should apply. Henning additionally argued that Avera's failure to provide her due process caused her emotional distress.

[¶10.]     The circuit court held a hearing on Avera's motion and thereafter issued a memorandum decision granting Avera summary judgment. The court noted that Henning admitted in her deposition that she was an at-will employee and that Avera had not provided her anything, written or verbal, indicating that she was something other than an at-will employee. Therefore, the court concluded that Henning could not proceed on her breach of contract or wrongful termination claims. The court further reasoned that Henning failed to identify any evidence to support her claim that a public policy exception to the at-will doctrine applies here.

[¶11.]     On Henning's defamation claim, the court noted that Henning testified in her deposition that she was unaware of any false information reported by Avera related to either her documentation errors or her inability to account for controlled substances. The court also noted that Henning had not pointed to any statements by Avera that would imply a false assertion of an objective fact about Henning. Rather, the court determined that the record revealed that Avera's reports described *suspected* diversion. The court further concluded that the communications were privileged because Avera reported its suspicions to persons and entities with a common interest in the diversion of controlled substances. Finally, the court held that because malice could not be inferred, Henning would have to prove malice to destroy the privilege. In the court's view, Henning could not show malice because she did not produce evidence showing that Avera had doubts about the truth of the particular statements communicated to these entities.

[¶12.]     Although Henning did not directly plead a claim for intentional infliction of emotional distress, the court addressed this issue because counsel

argued it "was implied in several paragraphs of the *Complaint* that used terms 'mental distress' and 'emotional distress.'" The court characterized Henning's claim as follows: "Avera reported her to [the] DCI, the DEA, and the Nursing Board when it had, or should have had, serious doubts about Henning diverting based on the lack of evidence." The court noted that Avera had a duty (under the law and its own policies) to report possible theft or loss of controlled substances to those agencies. The court thus determined that Henning failed to identify a material issue of fact in dispute to support that Avera acted so outrageously in character and extreme in degree as to go beyond all bounds of decency.

[¶13.]     Henning appeals, asserting that the circuit court erred in granting summary judgment.

## Standard of Review

[¶14.]     "We review a summary judgment de novo." *Heitmann v. Am. Family Mut. Ins. Co.*, 2016 S.D. 51, ¶ 8, 883 N.W.2d 506, 508. In doing so, we determine whether there are any genuine issues of material fact in the case and whether the law was correctly applied. *Id.* (quoting *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 6, 822 N.W.2d 724, 726). However, "[w]e view the evidence 'most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party.'" *Dowling Family P'ship v. Midland Farms, LLC*, 2015 S.D. 50, ¶ 9, 865 N.W.2d 854, 859 (quoting *Peters v. Great W. Bank, Inc.*, 2015 S.D. 4, ¶ 5, 859 N.W.2d 618, 621).

**Analysis and Decision**

*Wrongful Termination*

[¶15.] Henning does not dispute that she was an at-will employee. However, she argues that Avera's controlled substance abuse policy created an express or implied exception to the at-will doctrine in cases of suspected theft or diversion of controlled substances. She further contends that Avera failed to follow its policy by not arranging for drug screening, not suspending her without pay pending further investigation, and not conducting a further investigation. Finally, she argues that Avera's failure to follow its policy deprived her "of any meaningful opportunity to clear her name, save her job and prevent irreparable harm to her personal reputation and professional license."

[¶16.] Under SDCL 60-4-4, "[a]n employment having no specified term may be terminated at the will of either party on notice to the other[.]" As such, an at-will employee has no right to due process and may be terminated "at any time for any reason."[3] *Hollander v. Douglas Cty.*, 2000 S.D. 159, ¶ 13, 620 N.W.2d 181, 185 (quoting *Petersen v. Sioux Valley Hosp. Ass'n*, 486 N.W.2d 516, 520 (S.D. 1992)). However, an employer may either expressly or impliedly surrender its statutory at-will power. *Aberle v. City of Aberdeen*, 2006 S.D. 60, ¶ 21, 718 N.W.2d 615, 621. "An express surrender occurs when the employer affirmatively indicates such intent by adopting written personnel policies or manuals that explicitly state that a for-

---

3. In *Novotny v. Sacred Heart Health Services*, we explained that a due process violation requires that a state actor deprive the plaintiff of a protected property or liberty interest. 2016 S.D. 75, ¶ 15, 887 N.W.2d 83, 91. Henning has not claimed that Avera is a state actor; nor has she identified a protected property or liberty interest at issue here.

cause termination procedure must be followed." *Id.* An implied surrender occurs when "policies or handbooks 'contain[] a detailed list of exclusive grounds for employee discipline or discharge and a mandatory or specific procedure which the employer agrees to follow prior to any employee's termination[.]" *Id.* (citation ommited). In either regard, the employer's intent to surrender its right to terminate an employee at will must be clear. *Id.* ¶ 22.

[¶17.]    Here, Henning has not established that Avera either expressly or impliedly surrendered its at-will power via its controlled substance use policy. The policy neither affirmatively indicates an intent to relinquish its authority to terminate Henning at will; nor does the language of the policy support that Avera adopted a detailed list of exclusive grounds for discipline or termination and agreed to follow a specific procedure prior to making a termination decision. More importantly, Henning agreed in her deposition that Avera never represented to her, in writing or orally, that she was anything other than an at-will employee.

[¶18.]    In her reply brief on appeal, Henning asks this Court to recognize a public policy exception to the at-will doctrine, "if it isn't already recognized in our law," for "termination based upon criminal accusations that are not sufficiently substantiated[.]" Henning, however, cites no law from this Court or any jurisdiction to support her conclusory statement. Further, even if we were inclined to consider this argument absent a more developed legal analysis, the exception suggested by Henning is a nebulous concept in terms of what constitutes "sufficient substantiation" to terminate an employee suspected of committing a crime. Therefore, we decline to adopt such an exception. As we noted in *Harvey v.*

*Regional Health Network, Inc.*, adopting unfounded public policy exceptions "would eviscerate the at-will doctrine in favor of judicial management of employee/management relations." 2018 S.D. 3, ¶ 50, 906 N.W.2d 382, 397. The circuit court properly granted summary judgment on Henning's wrongful termination claim.

*Defamation*

[¶19.]     Henning contends that material issues of fact are in dispute on her defamation claim. She directs this Court to Boyd's deposition testimony, namely that Boyd did not believe there was enough evidence to support that Henning diverted controlled substances. She further contends that Avera acted with malice when it repeatedly represented and characterized Henning "as a drug user, thief or diverter[.]" Relying on this premise, along with Avera's failure to investigate further before reporting to the various agencies, Henning contends a jury should determine whether Avera defamed her by wrongfully accusing her of suspected diversion of controlled substances.

[¶20.]     As we recently recognized in *Hernandez v. Avera Queen of Peace Hospital*, "[d]efamation under SDCL 20-11-2 includes libel and slander." 2016 S.D. 68, ¶ 29, 886 N.W.2d 338, 348. "Libel" is defined in SDCL 20-11-3 as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." "Slander is a false and unprivileged publication, other than libel" under certain circumstances. SDCL 20-11-4. However, "[b]oth

libel and slander require false and unprivileged communications." *Hernandez*, 2016 S.D. 68, ¶ 29, 886 N.W.2d at 348. Under SDCL 20-11-5(3), a privileged communication includes one made:

> without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information . . . .

[¶21.] Here, Henning does not dispute that some of the controlled substances she removed from the dispensing system could not be accounted for. She similarly does not dispute that Avera was required to report the suspected diversion of controlled substances to the various agencies and that the various agencies to whom Avera reported shared a common interest with Avera. Nevertheless, Henning asks us to find that a material issue of disputed fact exists on the question of malice because Avera did not conduct a further investigation before reporting the suspected drug diversion. "But 'malice cannot be inferred from the defamatory communication alone.'" *Hernandez*, 2016 S.D. 68, ¶ 29, 886 N.W.2d at 348 (quoting *Schwaiger v. Avera Queen of Peace Health Servs.*, 2006 S.D. 44, ¶ 10, 714 N.W.2d 874, 878). Moreover, in *Harvey*, we recognized that an employer's failure to investigate further does not alone establish a question of fact on whether the employer "entertained serious doubts as to the truth of the publication or acted in reckless disregard for the truth." 2018 S.D. 3, ¶ 33, 906 N.W.2d at 393. Because Henning failed to produce any other evidence from which it can be inferred that Avera recklessly disregarded the truth when it reported the suspected drug

diversion here, the circuit court properly granted summary judgment on Henning's defamation claim.

*Intentional or Negligent Infliction of Emotional Distress*

[¶22.]     Lastly, Henning argues that summary judgment was improperly granted because reasonable minds could differ on whether Avera's conduct was extreme and outrageous under the circumstances.  She acknowledges that Avera reported *suspected* diversion, but according to Henning, "the basic nature of the charge could only be reasonably understood as alleged theft of controlled substances."  Henning again points to her supervisor's deposition testimony that there was not sufficient evidence to support a claim of diversion.

[¶23.]     In response, Avera argues that Henning failed to plead these causes of actions in her complaint; therefore, they were properly dismissed.  Alternatively, Avera argues that summary judgment should be upheld because Henning failed to present evidence in support of each element required to support these causes of action.  For intentional infliction of emotional distress, Avera contends that Henning failed to clear the "rigorous benchmark" that must be established to support such a claim with proof of conduct "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community."  *See Harris v. Jefferson Partners, L.P.*, 2002 S.D. 132, ¶ 11, 653 N.W.2d 496, 500 (citation omitted).  In response to Henning's claim of negligent infliction of emotional distress, Avera notes that it owed Henning no duty to investigate further, no duty to withhold its

report, and no duty to continue her employment, and could not, therefore, be found negligent.

[¶24.]     Although Henning's complaint did not clearly delineate a claim for intentional or negligent infliction of emotional distress, we need not determine whether she complied with our notice pleading statutes.  Summary judgment was proper as to Henning's emotional distress claims because she failed to establish that material facts are in dispute as to any element of these claims.  Intentional infliction of emotional distress requires evidence of:

> (1) an act by the defendant amounting to extreme and outrageous conduct; (2) intent on the part of the defendant to cause the plaintiff severe emotional distress; (3) the defendant's conduct was the cause in-fact of plaintiff's distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.

*Anderson v. First Century Fed. Credit Union*, 2007 S.D. 65, ¶ 38, 738 N.W.2d 40, 51–52.  To prove negligent infliction of emotional distress, Henning must establish that Avera engaged in negligent conduct, including that Avera breached a legal duty imposed by statute or common law.  *See Harvey*, 2018 S.D. 3, ¶ 51, 906 N.W.2d at 397.

[¶25.]     Henning bases both emotional distress claims on Avera's failure to investigate further before terminating her and before reporting suspected drug diversion to the various agencies.  But even if we conclude that Avera could have investigated more thoroughly, a failure to further investigate does not create an issue of fact in dispute on the question whether Avera's conduct was *extreme and outrageous*.  It is undisputed that Henning could not account for certain controlled substances she removed from the dispensing system.

Moreover, Henning does not dispute that Avera had a duty to report theft or loss of controlled substances to the Department of Health, the DEA, and the Pharmacy Board and that it had a policy to report potential theft or diversion of controlled substances to the DCI and Nursing Board.[4] The circuit court, therefore, properly granted summary judgment on her claim of intentional infliction of emotional distress.

[¶26.] The circuit court did not rule on Henning's claim of negligent infliction of emotional distress. This is likely because she did not specifically plead the claim in her complaint and did not clearly argue the claim during the summary judgment hearing. Nevertheless, after our de novo review of the record, Henning has not presented "specific facts showing that a genuine, material issue for trial exists." *See Hamilton v. Sommers*, 2014 S.D. 76, ¶ 17, 855 N.W.2d 855, 861 (citation omitted). In particular, although Henning claims that Avera "summarily terminated" her without conducting an "additional employee investigation," she was an at-will employee and has not established that Avera owed her a duty to investigate prior to terminating her. Because Avera could terminate Henning at any time for any reason, summary judgment on this claim is also proper.

---

4. Avera did not cite specific laws or regulations requiring the reporting of potential drug diversion. However, Robert Coolidge from the Board of Pharmacy agreed in his deposition that the South Dakota Department of Health regulates narcotics under SDCL chapter 34-20B, and that Avera, as an entity registered to distribute narcotics, must report possible drug diversion to the Department of Health, the Board of Pharmacy, and the DEA. Avera's controlled substance use policy provides that Avera notify the same entities as well as the appropriate licensing agency and the DCI.

#29081

[¶27.]     Affirmed.

[¶28.]     GILBERTSON, Chief Justice, and KERN, JENSEN, and SALTER,

Justices, concur.