#28263, 28264-aff in pt & rev in pt-SRJ
**2018 S.D. 16**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

#28263

IN RE: THE MATTER OF THE
ISSUANCE OF A SUMMONS
COMPELLING AN ESSENTIAL
WITNESS TO APPEAR AND
TESTIFY IN THE STATE OF
MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

#28264

IN RE: THE MATTER OF THE
ISSUANCE OF A SUMMONS
COMPELLING AN ESSENTIAL
WITNESS TO APPEAR AND
TESTIFY IN THE STATE OF
MINNESOTA

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MOODY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK T. PARDY
Judge

* * * *

CONSIDERED ON BRIEFS
JANUARY 8, 2018
OPINION FILED **02/14/18**

JASON UNGER
Flandreau, South Dakota

Attorney for Appellants,
M.M.W. & William Joseph
Wilkie.

MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota

Attorneys for Appellee,
State of South Dakota.

JENSEN, Justice

[¶1.]       Appellant William Joseph Wilkie (Wilkie) and his granddaughter,

Appellant M.M.W., each appeal the entry of a circuit court order in two separate

proceedings.  The orders summon Wilkie and M.M.W. to appear and testify in an

out-of-state criminal proceeding in Clay County, Minnesota.  We consolidate the

cases for resolution of their appeals.  Wilkie and M.M.W. claim their rights as

victims were violated because they were not advised of their right to counsel during

the circuit court proceedings.  They also claim the circuit court erred in issuing the

orders.  We affirm the order pertaining to Wilkie and reverse and remand the order

pertaining to M.M.W.

**Background**

[¶2.]       Dustin James Wilkie (Dustin), Wilkie's son and M.M.W.'s father, was

charged with domestic assault of M.M.W. in Minnesota.  M.M.W. immediately

called her grandfather after the alleged assault to report the incident.  M.M.W.

subsequently moved to South Dakota to live with Wilkie.  The State of Minnesota

sought to summon Wilkie and M.M.W. as witnesses at Dustin's trial.

[¶3.]       On April 26, 2017, a judge of the Seventh Judicial District of the State

of Minnesota issued two certificates declaring Wilkie and M.M.W. necessary and

material witnesses in the prosecution of the criminal action against Dustin.  The

certificates also stated there were no known hardships for either witness to testify.

The certificates were supported by affidavits submitted by the Clay County,

Minnesota prosecuting attorney, setting forth the facts in support of the request to

summon the testimony of Wilkie and M.M.W.  The certificates directed Wilkie and

M.M.W. to be available to testify for one to three days in May of 2017 in Moorhead, Minnesota, an approximate three-hour drive from Flandreau, South Dakota, where Wilkie and M.M.W. were living.

[¶4.]     The Minnesota certificates were issued in conformity with the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (Uniform Act), codified at SDCL 23A-14-14 through SDCL 23A-14-24. Upon receipt of the Minnesota certificates, the Moody County State's Attorney filed a motion requesting the South Dakota circuit court to enter an order summoning Wilkie and M.M.W. to appear and testify in the Minnesota criminal proceeding. Pursuant to SDCL 23A-14-15[1] and SDCL 23A-14-16,[2] the circuit court ordered Wilkie and M.M.W. to attend a hearing in Flandreau on May 8, 2017, to show cause

---

1.     SDCL 23A-14-15 provides:

> If a judge of a court of record in any state . . . certifies under the seal of such court that there is a criminal prosecution pending in that court, . . . that a person in this state is a material witness in such prosecution[,] . . . and that his presence will be required for a specified number of days, a South Dakota circuit judge of the county in which such person is, shall, upon presentation of such certificate, fix a time and place for a hearing, and shall make an order directing the witness to appear at the hearing.

2.     SDCL 23A-14-16 provides:

> If a hearing is ordered pursuant to § 23A-14-15 and a judge determines that a witness is material and necessary [and] that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution[,] . . . [the judge] shall issue a summons, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending . . . at a time and place specified in the summons. In any such hearing the certificate shall be prima facie evidence of all the facts stated therein.

why they should not be ordered to attend and testify in the Minnesota criminal case. On the date of the hearing, Wilkie and M.M.W. mistakenly drove to Moorhead, Minnesota, believing the hearing would be held there. By the time the mistake was realized, it was impossible for the pair to travel back to Flandreau in time for the hearing. The circuit court allowed Wilkie to voice his objections to the State's motion over the telephone.

[¶5.] Wilkie and M.M.W. were unrepresented by counsel at the hearing, and the circuit court did not advise or discuss consultation with an attorney. Wilkie represented over the phone that M.M.W. had "a rough year in the past year" and was seeing a counselor. Wilkie also stated that he did not want M.M.W. to have to relive the incident by testifying and that it was "starting to cost [Wilkie] a lot of money to go back-and-forth." The circuit court stated that it had reviewed a letter from M.M.W.'s counselor dated May 5, 2017.

[¶6.] The court determined that Wilkie had failed to show a personal hardship. As to M.M.W., the court noted the severity of the underlying charges against M.M.W.'s father and the belief that the State of Minnesota could implement procedures to protect M.M.W. upon her request. The circuit court entered orders directing both Wilkie and M.M.W. to appear and testify as witnesses at the Minnesota trial.

[¶7.] Wilkie and M.M.W. raise two issues for our review:

1. Whether Wilkie and M.M.W.'s rights as victims were violated by not being advised of their right to counsel.

2. Whether the circuit court erred in issuing an order for Wilkie and M.M.W. to appear and testify in Minnesota criminal court.

**Analysis**

*Jurisdiction*

[¶8.] In its brief, the State requests this Court to dismiss the appeal for lack of jurisdiction. The State argues this Court lacks appellate jurisdiction because there is not a criminal statute conferring such jurisdiction in SDCL chapter 23A-32. The State correctly notes that "[t]his Court has only 'such appellate jurisdiction as may be provided by the legislature. The right to appeal is statutory and therefore does not exist in the absence of a statute permitting it.'" *State v. Schwaller*, 2006 S.D. 30, ¶ 5, 712 N.W.2d 869, 871 (quoting *Dale v. City of Sioux Falls*, 2003 S.D. 124, ¶ 6, 670 N.W.2d 892, 894).

[¶9.] The State's argument is premised on its categorization of the appealed orders as criminal matters. The State recognizes the possibility that the proceedings are civil in nature, citing *Codey ex rel. State of New Jersey v. Capital Cities, American Broadcasting Corp.*, 626 N.E.2d 636 (N.Y. 1993), and acknowledges that if the proceedings are civil, then the case may be appealable under SDCL 15-26A-3(2) or (4). Wilkie and M.M.W. assert that the case is properly appealed as a matter of right under SDCL 15-26A-3 and SDCL 15-26A-4.

[¶10.] In *Codey*, the Court of Appeals of New York determined that proceedings to summon a witness under the Uniform Act are civil proceedings. 626 N.E.2d at 640. The court stated that an order determining the "validity and force of another State's demand for a witness's appearance . . . is analytically analogous to a motion to quash a subpoena, which is ordinarily deemed civil in nature." *Id.*

[¶11.] We conclude a proceeding to summon a witness to testify in an out-of-state criminal proceeding under SDCL 23A-14-14 through SDCL 23A-14-18 is a civil proceeding.[3] Although the South Dakota proceedings are ancillary to a criminal proceeding in another state and the governing statutes are found in the criminal procedure section of the South Dakota Code, the proceedings do not involve the arrest, charge, or punishment of an individual for a public offense. Rather, the proceedings represent the circuit court's determination whether a witness is material and necessary, and whether the summons will cause the witness undue hardship under SDCL 23A-14-16. These determinations are civil in nature and do not implicate the resolution of a criminal charge. Thus, this Court has jurisdiction to consider the appeals from these orders as a "final order affecting a substantial right, made in special proceedings" under SDCL 15-26A-3(4).

***State's Motion to Strike***

[¶12.] The State also moves this Court to strike certain statements and materials referenced by Wilkie and M.M.W. in their briefs. First, Wilkie and M.M.W. reference motions they filed to stay the orders summoning their testimony pending their appeals and the circuit court's denial of the motions for lack of jurisdiction. The State concedes the motions are in the record, but the record does

---

3. Even though this proceeding is civil in nature, the entry of an order placing a witness into the custody of an officer of a requesting state under SDCL 23A-14-17, or a criminal contempt application under SDCL 23A-14-18, may give rise to a constitutional right to counsel. We have previously recognized that a criminal contempt citation in a civil proceeding triggers constitutional protections. *Sazama v. State ex rel. Muilenberg*, 2007 S.D. 17, ¶ 24, 729 N.W.2d 335, 344.

not contain a ruling or a transcript of a hearing. Second, the State asks to strike references by Wilkie and M.M.W. concerning further proceedings in the Minnesota criminal case while these appeals were pending. The record does not contain evidence of such proceedings. Because the contested references are not material to this appeal, we do not consider these references.

***Victim's Right to Counsel***

[¶13.] Wilkie and M.M.W. argue that the recent amendment found in the South Dakota Constitution, article VI, § 29, approved by South Dakota voters in November of 2016, otherwise known as Marsy's Law, guarantees crime victims the right to be informed that they may consult an attorney about their rights as victims.[4] They suggest this right is commensurate with a criminal defendant's Sixth Amendment right to the assistance of counsel. Wilkie and M.M.W. argue that, at a minimum, they were deprived of their rights under Marsy's Law because they were not properly notified of their right to consult an attorney. The State responds that Minnesota law applies to this proceeding. The State also argues that the victim rights set forth in South Dakota's Constitution are not applicable to a crime committed outside South Dakota. Finally, the State asserts that even if

---

4.      Specifically, Article VI, § 29 of the South Dakota Constitution provides:

> A victim shall have the following rights, beginning at the time of victimization:
> . . . .
> 19.     The right to be informed of these rights, and to be informed that a victim can seek the advice of an attorney with respect to the victim's rights. This information shall be made available to the general public and provided to each crime victim in what is referred to as a Marsy's Card.

Marsy's Law is applicable, Wilkie and M.M.W. are not entitled to the appointment of counsel but at most, to be *advised* of a right to consult with an attorney. To resolve this issue, we only address the narrow question whether the Marsy's Law rights in South Dakota's Constitution are applicable to crimes committed outside the State of South Dakota.

[¶14.] "Constitutional amendments are adopted for the purpose of making a change in the existing system and we are 'under the duty to consider the old law, the mischief, and the remedy, and interpret the constitution broadly to accomplish the manifest purpose of the amendment.'" *Doe v. Nelson*, 2004 S.D. 62, ¶ 15, 680 N.W.2d 302, 308 (quoting *South Dakota Auto. Club, Inc. v. Volk*, 305 N.W.2d 693, 697 (S.D. 1981)). "The object of constitutional construction is 'to give effect to the intent of the framers of the organic law and the people adopting it.'" *Davis v. State*, 2011 S.D. 51, ¶ 77, 804 N.W.2d 618, 643 (Gilbertson, C.J., concurring in result) (quoting *Doe,* 2004 S.D. 62, ¶ 12, 680 N.W.2d at 307)). "A constitutional provision, like a statute, must be read giving full effect to all of its parts." *South Dakota Bd. of Regents v. Meierhenry*, 351 N.W.2d 450, 452 (S.D. 1984). "Where a constitutional provision is quite plain in its language, we construe it according to its natural import." *Brendtro v. Nelson,* 2006 S.D. 71, ¶ 16, 720 N.W.2d 670, 675.

[¶15.] In considering whether Marsy's Law is applicable to victims of crimes committed outside South Dakota, we examine the language of Article VI, § 29. The second to the last paragraph of Article VI, § 29 succinctly expresses that the purpose of Marsy's Law is to "ensure the victim has a meaningful role throughout the criminal and juvenile justice systems." This language, along with the nineteen

enumerated rights in Article VI, § 29, show that the predominant purpose of Marsy's Law is to ensure that crime victims are kept informed and allowed to meaningfully participate in the criminal justice system throughout the time a crime is prosecuted and punished. Further, Article VI, § 29 states that a victim may assert and seek enforcement of these rights "in any trial or appellate court, or before any other authority *with jurisdiction over the case . . . ."* (Emphasis added.) South Dakota agencies and courts only have jurisdiction to prosecute and punish a criminal offense committed "in whole or in part within the [S]tate." *State v. Winckler*, 260 N.W.2d 356, 360 (S.D. 1977).[5]

[¶16.]    Expanding these rights in South Dakota's constitution to victims of crimes committed outside South Dakota is inconsistent with the expressed purpose of Article VI, § 29. Where a crime occurs in another state, the victimization occurred outside South Dakota and justice for the victim must be realized in the state where the crime took place. Further, the victim's ability to exercise the rights to receive adequate information and to meaningfully participate throughout the criminal process must also take place in the state where the crime occurred and the criminal case proceeds.

[¶17.]    At issue here is the right set forth in subsection 19, which states that a victim has a right to be informed that he or she "can seek the advice of an attorney"

---

5.    Wilkie and M.M.W. argue that the circuit court had jurisdiction here and the rights in Article VI, § 29 should be recognized by the court considering the out-of-state summons to testify. However, aside from claims of privilege and confidentiality, Article VI, § 29 makes no mention of victim rights associated with testifying at grand jury, testifying in court, or in responding to a subpoena or summons from the prosecutor.

about the rights afforded in Article VI, § 29. This right, along with nearly all the rights listed in Article VI, § 29, appears to place some affirmative obligations on law enforcement, prosecutors, state and local corrections, and the courts in South Dakota. If we were to interpret Article VI, § 29 to be applicable to crimes committed outside of South Dakota, it would create an untenable situation of potentially imposing affirmative obligations on South Dakota authorities and courts over which they have no jurisdiction or authority to act. Moreover, it is unlikely, in most instances, that South Dakota authorities or courts would be aware that an individual present in the state is a victim of a crime in another state or have any ability to redress such rights.

[¶18.] "This Court will not construe a constitutional provision to arrive at strained, unpractical or absurd result." *Brendtro*, 2006 S.D. 71, ¶ 30, 720 N.W.2d at 680 (quoting *Breck v. Janklow,* 2001 S.D. 28 ¶ 12, 623 N.W.2d 449, 455). Based upon the plain language and stated purposes enumerated in the Amendment, we hold that the constitutional rights set forth in Article VI, § 29 are inapplicable to crimes committed wholly outside the State of South Dakota.[6]

---

6. The language of Article VI, § 29 also presents questions concerning the scope of a victim's rights in civil proceedings. Specifically, we note the following language: "[t]he granting of these rights to any victim shall ensure the victim has a meaningful role throughout the *criminal and juvenile justice systems* and may not be construed to deny or disparage other rights possessed by victims. All provisions of this section apply throughout *criminal and juvenile justice processes . . . ."* S.D. Const. art. VI, § 29 (emphasis added). Because of our resolution of the narrow issue here, it is unnecessary to determine the applicability of Article VI, § 29 rights in a civil proceeding.

[¶19.]     Because the proceedings in South Dakota did not implicate Article VI, § 29 of the South Dakota Constitution, the circuit court had no obligation to advise either Wilkie or M.M.W. of any rights under Marsy's Law.

### Circuit Court's Order to Appear and Testify in Out-Of-State Criminal Proceedings

[¶20.]     Wilkie and M.M.W. claim that there is not an adequate showing that they are both material and necessary witnesses. Wilkie and M.M.W. also argue they will suffer undue hardship if they are compelled to attend and testify in the Minnesota criminal trial. They point to the fact that South Dakota has not yet had the opportunity to address what constitutes undue hardship under SDCL 23A-14-16. Appellants claim that South Dakota law is consistent with the Uniform Act as adopted by the National Conference of Commissioners on Uniform State Laws in 1936. They cite cases from other jurisdictions which have adopted the same. *See Epstein v. People ex rel. N.Y.*, 157 So. 2d 705, 708 (Fla. Dist. Ct. App. 1963) (finding no abuse of discretion in a state court's decision to compel attendance of witness in a sister state's proceeding); *Commonwealth v. Gasdik*, No. 04-1415, 2004 WL 3186247, at *1 (Mass. Super. Nov. 10, 2004) (stating that "certain circumstances such as a specific threat, the possibility of psychological harm, or the tender age of a child witness might constitute an undue hardship," but refusing to find such circumstances in the case); *In re Stoddard*, 470 A.2d 1185, 1187 (Vt. 1983) (holding it is essential for a trial court to state findings of fact as to necessity, materiality, and undue hardship and not rely on facts stated in a certificate asking for the attendance of a witness).

[¶21.] As noted above, the circuit court's order is akin to a ruling on a motion to quash a subpoena—a discovery order. We review a circuit court's decision on discovery matters for an abuse of discretion. *Novotny v. Sacred Heart Health Servs.*, 2016 S.D. 75, ¶ 5, 887 N.W.2d 83, 87. Similarly, a circuit court's ruling on evidentiary questions "will not be overturned absent a clear abuse of discretion." *St. John v. Peterson*, 2011 S.D. 58, ¶ 10, 804 N.W.2d 71, 74. "An abuse of discretion is 'a choice outside the range of permissible choices.'" *Coloni v. Coloni*, 2017 S.D. 66, ¶ 6, 903 N.W.2d 745, 747 (quoting *Rumpza v. Zubke*, 2017 S.D. 49, ¶ 7, 900 N.W.2d 601, 604). We apply the abuse of discretion standard to the circuit court's order compelling Wilkie and M.M.W. to testify at the Minnesota criminal trial.

[¶22.] At the May 8, 2017 phone hearing, the circuit court made minimal oral findings of fact and conclusions of law. The circuit court stated, in pertinent part:

> The [c]ourt has reviewed the entire file, it appears that the underlying criminal allegation is very serious. . . . The [c]ourt is going to order that [Wilkie] appear as an essential witness personally. None of your comments really related to a hardship for yourself, so I will order that you appear, and I'm going to sign that order, sir.
>
> In addition, based on the seriousness of the underlying offense, and the procedures that I'm sure their court and State can use as it relates to whatever testimony, if any, may be requested from [M.M.W.], I am going to sign that [o]rder as well. So [M.M.W.] will be commanded to appear.

[¶23.] SDCL 23A-14-16 requires "a judge [to] determine[] that a witness is *material* and *necessary* [and] that it will not cause *undue hardship* to the witness to be compelled to attend and testify in the prosecution." (Emphasis added.) SDCL 23A-14-16 provides that the certificate from the requesting state is "prima facie evidence of all the facts stated therein." We have held in other contexts that prima

-11-

facie evidence creates a presumption under SDCL 19-19-301. *See Lord v. Hy-Vee Food Stores*, 2006 S.D. 70, ¶ 23, 720 N.W.2d 443, 453. Under SDCL 19-19-301, "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption" and "[w]hen substantial, credible evidence has been introduced to rebut the presumption, it shall disappear from the action or proceeding . . . ." "[T]he substantial, credible evidence requirement means that a presumption may be rebutted or met with such evidence as a trier of fact would find sufficient to base a decision on the issue, if no contrary evidence was submitted." *Nemec v. Goeman*, 2012 S.D. 14, ¶ 21, 810 N.W.2d 443, 448 (quoting *Stavig* v. *Stavig,* 2009 S.D. 89, ¶ 16, 774 N.W.2d 454, 460).

[¶24.]		Here, the certificates from the Minnesota court provided prima facie evidence that Wilkie and M.M.W. were material and necessary witnesses for the Minnesota criminal case. The Minnesota certificates and affidavits stated that Wilkie and M.M.W. are material and necessary witnesses to prove the elements of the alleged assault. The certificates specifically set forth that M.M.W. was a victim of the assault and that M.M.W. called Wilkie by phone immediately after the assault occurred. Neither Wilkie nor M.M.W. presented any evidence to refute this prima facie showing of materiality and necessity. Wilkie and M.M.W. argue that only one of them could be material and necessary witnesses in the Minnesota prosecution, but they have failed to present any authority in support of their claim that summoning one witness with knowledge precludes summoning the other witness with similar knowledge.

[¶25.] We turn then to the claim that the orders summoning testimony in the Minnesota case will create a hardship on Wilkie and M.M.W. The certificates and affidavits provide that there was no known reason that an order compelling Wilkie and M.M.W. to testify would cause undue hardship. The circuit court permitted Wilkie to appear by phone and present objections on behalf of both himself and M.M.W. During the hearing, Wilkie claimed that the proceedings were starting to cost him a lot of money to drive back and forth. He provided no specifics on what costs he would incur or whether those costs would exceed the statutory reimbursements under SDCL 23A-14-18. Wilkie's other comments to the circuit court addressed his concerns about M.M.W. being required to testify in the Minnesota criminal trial. After considering Wilkie's comments, the circuit court found that none of Wilkie's "comments really related to a hardship for yourself."

[¶26.] On appeal, Wilkie argues that he "produced evidence of undue hardship to both [M.M.W. and himself]" and also that he was not given an adequate opportunity to present his own hardship to the circuit court. From our review, we cannot say that the circuit court erred in finding that Wilkie failed to present any evidence of hardship for *himself*. The court did not abuse its discretion in ordering Wilkie to appear and testify in Minnesota.

[¶27.] In regard to M.M.W., Wilkie expressed his concern, as M.M.W.'s caretaker, about the impact that testifying would have on M.M.W. A letter from M.M.W.'s counselor was also submitted to the circuit court. The letter expressed that M.M.W. was experiencing mental health issues as a result of stress and trauma. The counselor's letter opined that "testifying would likely negatively

impact her mental health and cause an increase in her depressive symptomology, trauma symptomology and suicidality."

[¶28.] The circuit court did not make any finding on whether the counselor's letter and Wilkie's statements rebutted the prima facie showing by the State of no known hardship. Moreover, the State's failure to present any evidence in response to the mental health concerns raised by M.M.W. made it impossible for the circuit court to adequately consider the hardship issue raised by M.M.W. The circuit court simply noted the seriousness of the Minnesota charges and the "procedures that I'm sure" the Minnesota court can employ in handling M.M.W.'s testimony. The circuit court made no findings on hardship or the mental health concerns raised by M.M.W.'s counselor if M.M.W. were required to testify. The failure of the circuit court to make adequate findings on an issue is an abuse of discretion. *See Guardianship of Nelson*, 2017 S.D. 68, ¶ 17, 903 N.W.2d 753, 758.

## Conclusion

[¶29.] We affirm the order directing Wilkie to testify at the Minnesota trial. We reverse and remand the order directing M.M.W. to testify. The record should be further developed on M.M.W.'s claim of hardship so that the circuit court can make adequate findings of fact under SDCL 23A-14-16 on the question of undue hardship.

[¶30.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.